Kinkade, J.
 

 This is an action to determine the ownership and secure the possession of a certain sum of money, amounting to $5,500, held in trust. The action involves the question of the correct measure of damages resulting from the breach of a contract for professional services to be rendered by lawyers. The controlling facts are not in dispute.
 

 
 *504
 
 The plaintiffs in error, herein referred to as plaintiffs, are a law partnership • practicing in Cleveland. They have had extensive and successful experience in the prosecution of personal injury cases.
 

 The defendants in error Montgomery, husband and wife, residents of Cleveland, each sustained serious personal injuries by a collision between the automobile in which they were riding and a motor truck belonging to the defendant in error, the Industrial Fibre Corporation. The owner of the truck carried indemnity insurance against accidents of this character, issued by the defendant in error United States Fidelity & Guaranty Company.
 

 The Montgomerys, with full knowledge of the standing and successful experience of the plaintiffs, each employed the plaintiffs to recover .damages for the injuries so sustained. The contracts of employment were in writing, and were as follows :
 

 “March 28, 1922.
 

 “I hereby employ Howell, Roberts
 
 &
 
 Duncan as my attorneys at law to bring suit or effect a settlement for damages against Industrial Fibre Silk Co., for personal injuries to back, etc., which occurred on West 98 St. on or about 27th day of Feb. 1922. As their pay said Howell, Roberts
 
 &
 
 Duncan, are to receive 33-1/3 per cent, of whatever amount received by me in case of trial or settlement.”
 

 Immediately after the making of the written contracts, plaintiffs went forward with the preparation of the cases by interviewing witnesses, pre
 
 *505
 
 paring pleadings and doing all other things necessary to protect and promote the interests of the Montgomerys, including an attempt to secure an amicable settlement with the truck owner and the indemnity insurance company. The Montgomerys were at the time fully informed as to all that was being done by the plaintiffs, and approved and concurred therein. The efforts of plaintiffs to compromise on a sum satisfactory to the Montgomerys were unsuccessful, and thereupon the Montgomerys directed the plaintiffs to begin legal proceedings in both cases forthwith. Pursuant to these instructions, plaintiffs sent to the Montgomerys the petitions that had been prepared for inspection, verification, and return to plaintiffs for filing. After receiving and carefully examining these petitions, the Montgomerys informed plaintiffs that the petitions were entirely satisfactory, and that they would be sworn to and returned for filing within a day or two. Shortly thereafter the plaintiffs received a letter from a lawyer named Tim Long, one of the defendants in error, saying that he had been employed by the Montgomerys to prosecute these actions, and asking plaintiffs to make up their account for disbursements made and services rendered to that date, and to present the same for consideration. Long copied the petitions
 
 verbatim,
 
 which had been prepared by the plaintiffs, and which he got from the Montgomerys, had his copies sworn to by the Montgomerys, respectively, and then signed and filed them as his own. Long retained the defendant in error David to assist him in the trial of the actions, if a
 
 *506
 
 compromise were not effected. Thereafter a compromise was agreed upon between the Montgomerys, the'owner of the truck, and the guaranty company, in the sum of $16,500, and thereupon the plaintiffs notified all parties interested that plaintiffs claimed one-third of the settlement money; that is to say, $5,500. Payment was refused, and this action was then commenced by the plaintiffs. By agreement of all interested, two-thirds of the settlement money was paid to the Montgomerys by the truck owner and the guaranty company, and the remaining one-third was paid to the defendant in error David, to be held in trust by him for the rightful owners thereof, as should later be determined in this action. The trial court held that plaintiffs were entitled to the full sum in the hands of the trustee. On appeal, the Court of Appeals held that the plaintiffs could recover only the reasonable value of services rendered up to the time when the Montgomerys elected to terminate, through Tim Long, as stated, the contract of employment, and on the evidence the Court of Appeals fixed the value of the plaintiffs’ services up to that time at $1,200. Plaintiffs prosecute error in this court.
 

 There is abundant evidence in the record to fully and clearly sustain the claim of plaintiffs that the attempted cancellation of the contract of employment by the Montgomerys was not based upon any just or reasonable ground, and that the plaintiffs were at all times ready, willing, and able to fully perform their part of the contract, and that they so notified the Montgomerys. The
 
 *507
 
 sole question is the measure of damages. The decisions of the courts of other states on this question are not in harmony. The decision of this court in the case of
 
 Scheinesohn
 
 v.
 
 Lemonek,
 
 84 Ohio St., 424, 95 N. E., 913, Ann. Cas., 1912C, 737, is a controlling decision upon the question involved. In that case the contention was made that the party seeking damages for the breach of contract could only recover the reasonable value of the services rendered up to the time of the breach of the contract by the other party. This court declined to adopt that measure of damage, saying that the
 
 quantum meruit
 
 rule was wholly inapplicable to a case where there had been no part performance by the one seeking to recover under the contract, and yet a recovery was had in that case. It is incomprehensible that one who has wholly failed to perform his part of a contract must be accorded a higher measure of damages than can be awarded to one who has performed to the fullest extent possible up to the time the other contracting party elects to terminate the contract.
 

 It is common knowledge, and quite in accord with good business judgment, that many actions sounding in tort are settled out of court because the wrongdoer has learned that lawyers possessing the skill and ability to recover judgments fully measuring up to the extent of the injuries inflicted have been retained to prosecute the case. The party in the wrong can make a fair estimate of the probable result of a litigation in court. He probably knows better than does any one else
 
 *508
 
 the extent of his own wrong. Indemnity insurance companies have a very wide field of statistics and experience from which to draw conclusions as to what juries and courts have done and may do in personal injury actions of like character. When the contract covers settlement, as well as trial through the courts to final determination and recovery, and the compensation is wholly contingent upon success, and is limited to an agreed percentage of the recovery, as in this case, there is no room for doubt about the obligations of the parties each to the other. It is a fair conclusion from facts which áre not in dispute here that the Montgomerys and Long, after conferring together, concluded it would be to their financial advantage to take over the work of the plaintiffs, and appropriate to their own use, in so far as possible, the effect of the standing and reputation of the plaintiffs, and thus dispense with further assistance from the plaintiffs. This proposition is certainly thrifty, but we are not impressed with its fairness. The written contract, and the facts, which are not in dispute, clearly entitle the plaintiffs to the entire fund held in trust by the defendant in error David. The judgment of the Court of Appeals will be reversed, and final judgment will be entered here in favor of the plaintiffs.
 

 Judgment reversed, and judgment for plaintiffs in error.
 

 Marshall, C. J., Matthias, Day and Robinson, JJ., concur.