**MAYS, ET, Plaintiffs-Appellees, v HARTMAN, ET, Defendants-Appellants.**

Ohio Appeals, First District, Hamilton County.

No. 6836.   Decided October 20th, 1947.

J. G. Williams, Cincinnati, for plaintiffs-appellees.
Leo J. Brumleve, Jr., Cincinnati, for defendants-appellants.

482

## OPINION

By MATTHEWS, PJ.

The plaintiff entered into a written contract with the defendants to do certain work and furnish certain material in making alterations in and additions to a dwelling-house in Cincinnati, as shown on the plans and specifications attached to and made a part of the contract. The plaintiffs agreed that all work would be done in a first-class workmanlike manner, and completed within 90 days from September 6th, 1945,—the date of the contract. They also agreed that the entire cost including material, labor, superintendent's fees and profits "shall not exceed $4600.00, and the parties of the second part shall not be liable to the party of the first part for any sum in excess thereof."

The plaintiffs agreed to carry Workmen's Compensation and public Liability Insurance, and to strive at all times to keep all costs as low as possible. Within the maximum cost of $4600.00, it was agreed that the plaintiffs were to be paid $2.00 per hour while on the job for superintending and had the right to employ all other workmen at the scale of wages in Cincinnati at the time the contract was made. It was agreed that the plaintiffs should be paid "every two weeks for all costs of material and labor furnished by them or under their supervision, upon delivery of receipted bills therefor."

Upon completion of the alterations and additions the defendants agreed to pay the plaintiffs ten (10) per cent "for overhead charges and an additional ten (10) per cent for profit" limited, however, as already noted, to a total cost including fees and profits of $4600.00.

The plaintiffs entered upon the work, and on September 20th, October 8th, October 20th, and November 8th, 1945 delivered receipted bills for labor and material aggregating $2252.15, and the defendants in each instance paid the amounts to the plaintiffs within a few days after the bills were submitted.

The latter part of November (either the 27th or 30th) the plaintiffs delivered to the defendants receipted bills totaling $1476.59. There is dispute as to the details, but there is no dispute that the defendants did not pay this last item, but

after some discussion with the plaintiffs arranged for them to meet in the office of their attorney on December 5th, to discuss the situation. At that meeting the plaintiff produced other receipted bills which made the total unpaid to the defendant $1715.35.

There is no dispute that at this meeting of December 5th the plaintiffs asked for payment of the receipted bills and that the defendant Charles Hartman called attention to the status of the work on the dwelling and the possibility of mechanic's liens being filed against the premises, and the parties made an estimate of what it would cost to complete the work required by the contract. Attention was called to the fact that the plaintiffs had already presented receipted bills for $3967.49, and that left only $632.51 as the maximum to be paid the plaintiffs for full performance of the contract. The total cost of the alterations and additions was estimated by the defendants at $1851.13 above the maximum of $4600.00. In reaching this figure the items were taken up separately and an estimate made. Both plaintiffs and defendants took part in this process, but to what extent the plaintiffs agreed is in dispute. The parties discussed the situation presented by the payments apparently being disproportionate to the progress of the work, but the meeting adjourned without any agreement being reached of any payment being made.

On one hand, it is claimed that defendants refused to pay. On the other, it is claimed that there was no refusal to pay and that the meeting adjourned with the understanding that Ben Mays, who had attended the meeting on behalf of the plaintiffs, was to conclut J. K. Mays in the light of the developments at the meeting, and that another conference should be held thereafter. However, no such meeting was held. On December 6th, 1945, which was the next day after this meeting, the plaintiffs discontinued all work on the dwelling house, and on March 23rd, 1946, filed this action on the contract to recover not only for the labor and materials actually furnished but also 10% for overhead and 10% for profit "as provided in said contract" making a total, including $561.19 for extras, of $3020.89. The plaintiffs did not allege full performance of the contract. They alleged that the defendants had failed and refused to pay the amount of the receipted bills and that the plaintiffs had performed all conditions on their part to be performed up to that time.

The defendants by answer pleaded the terms of the contract, alleged that the plaintiffs had failed to complete the performance of their contract, and denied generally the alle-

gations of the petition. By cross-petition, the defendants alleged that after the plaintiffs had abandoned the contract without excuse, they were required to expend $1514.20 in excess of the maximum contract price and they prayed judgment for that amount.

By reply to the answer and answer to the cross-petition, the plaintiffs alleged that they abandoned the work only after defendants' refusal to pay and because thereof, and that the defendants' interference prevented completion within the ninety days from date of contract.

The jury returned a verdict of $1510.00 for the plaintiffs and judgment was entered thereon. It is from that judgment that this appeal was taken.

Neither the pleadings nor the evidence raised any issue as to the making of the contract. The contract was in writing and the terms were undisputed. The only issues were as to which party had been guilty of a breach of the contract and the damage resulting therefrom.

It should be observed that the evidence is conflicting as to what took place at the conference on December 5th. The defendant, Charles R. Hartman, denied that he refused to pay. His testimony was that he delayed his decision to pay or not until he was informed of the attitude of the plaintiffs on the subject of the disproportion of payment and performance by the plaintiffs, and that the plaintiffs were to notify him thereon; and that without doing so the plaintiffs abandoned the contract.

Section 276 of Restatement of the Law of Contracts is:

"Unless the nature of a contract is such as to make performance on the exact day agreed upon of vital importance, or the contract in terms provides that it shall be so, failure by a promissor to perform his promise on the day stated in the promise does not discharge the duty of the other party."

Assuming, without deciding, that the absolute refusal of the defendants to pay would constitute a breach of a condition which would justify the plaintiffs in abandoning the contract, we are of the opinion that no such situation is presented here. As the evidence was conflicting, it became an issue of fact as to whether the first breach was committed by the defendants in refusing to pay, or whether the plaintiffs committed the first breach by abandoning the work the next day, instead of waiting a reasonable time for the defendants to perform by

paying the installment, assuming that the defendants were not justified in so withholding payment.

At the request of the plaintiffs, the court gave two special charges, to which the defendants excepted, and which they now assign as error. These special charges are:

"Whether or not the work could be completed and the materials furnished within the price stipulated in the contract, (Exhibit 2) has nothing to do with the obligation of the defendants to pay to the plaintiffs up to a total of $4600.00 when and if money became due under the terms of the contract."

"If your verdict is in favor of the plaintiffs, you will add to any amount found due for labor and materials furnished by the plaintiffs, or under their supervision, an amount equal to 10% of all labor and materials furnished, for overhead charges under the contract, and another 10% for profit; provided that the total amount of your verdict cannot exceed $4600.00 plus the reasonable value of all extras ordered by the defendants and furnished by the plaintiffs, less $2252.15 previously paid by the defendants, plus 6% interest from December 5, 1945 on the remainder."

Taken together, these two special charges gave to the plaintiffs the full damage resulting from the breach of all of the defendants' promises without any deduction by reason of being relieved of performance of promises made by them. By abandoning the contract, whether for just cause or otherwise, the plaintiffs avoided the completion of the alterations and additions at a cost in excess of the contract price. By so doing, they relieved themselves of a burdensome promise and cast upon the defendants the burden.

In Restatement of the Law of Contracts, at section 335, the rule applicable to this situation is stated as follows:

"If the defendant's breach of contract saves expense to the plaintiff by discharging his duty of rendering a performance in return or by excusing him from the performance of a condition precedent, the amount of this saving is deducted from the damages that would otherwise be recoverable."

In the footnote to Section 335, this illustration of the application of the rule is given:

"A contract to build a house for $10,000 promised by B. When it is partly built, B repudiates the contract. A's recover-

able damages are $10,000 less the amount saved by A in not, having to complete the house."

Where the specific situation is covered by the Restatement. of the Law, we deem it unnecessary to cite supporting authority. It is the highest authority under such circumstances.. However, the same rule is stated in 17 C. J. at pp. 927, et seq.

This rule was applied in Molyneux v Twin Falls Canal Co.,. 94 A. L. R. (Idaho      , 35 P. (2d) 651) 1264, under these circumstances as stated in the syllabus:

"In a contractor's action for loss of profits through not. being permitted to complete performance of his contract,. allowance should be made, in ascertaining the damages recoverable, of a reasonable amount for release from care, trouble, risk, and responsibility which would have attended the· full execution of the contract."

Although we construe this petition to state an action upon the contract and not on quantum meruit, we think the same measure of damages should be applied. In 5 Williston on Contracts, at page 4132, the author states that when once _it is admitted that the·plaintiff has a valid claim, the only problem would be "possible advantages received by the plaintiff from the part performance which had taken place, or (2) a possible right of recoupment or deduction in behalf of the defendant for the plaintiff's failure completely to fulfill his contract."

And, at pages 4123, and 4124, it is said:

"* * *  and the weight of authority strongly supports the statement that a builder, whose breach of contract is merely negligent, can recover the value of his work less the damages caused by his default, but that one who has willfully abandoned or broken his contract cannot recover."

We are of the opinion the issue as to whether the defendants by withholding payment or the plaintiffs by abandoning the work committed the breach of the contract, should have been submitted to the jury. The party in default could not recover either on the contract or in assumpsit. **Mehurin v Stone, 37 Oh St 49, at 55, et seq.**, where it is said:

"The judge in his opinion employs language which would lead to the inference that a different rule from the one above

stated prevails in regard to building contracts, as respects the performance by the builder; and he cites in support of that view, Hayward v Leonard, 7 Pick. 181. This case, however, in view of its peculiar facts, is not understood by the supreme judicial court of Massachusetts, as laying down any rule peculiar to building contracts. In Olmstead v Beale, 19 Pick. 528, after stating the general rule to be, that, where under the contract, performance by one party is to precede payment by the other, no recovery could be had either upon the contract, or upon an implied assumpsit, where the precedent conditions were not performed, the court say, 'The cases of Hayward v Leonard, 7 Pick. 181, and Smith v First Congr. Meeting-house in Lowell, 8 Pick. 178, are neither incompatible with, nor exceptions to the rule. It will be found in these and other similar cases, that there was an express or implied assent to the deviations from the contract, or a substantial performance of it. The equitable principle which governs them, and which itself is of recent introduction, only extends to unimportant, accidental and unintentional deviations, which, from the differences of opinion, that so often exist, in relation to the exact requisition in the detail of a special contract, had become indispensable to the administration of justice in such cases. But where there is an important and voluntary deviation or omission from the contract, the doctrine of Faxon v Mansfield, 2 Mass. 147, will apply, and the contractor can have no remedy for the materials furnished and the services performed.' "

See also, **Ginther v Shultz, 40 Oh St 104.**

However, as one or the other was in default and one or the other entitled to recover the measure of damage would be the same no matter which was the defaulter, with the exception that the defaulter would be limited to recoupment against the damages suffered by the non-defaulter.

If the jury found that the defendants committed the breach, then the plaintiffs would be entitled to recover the damages resulting to them by the failure of the defendants to perform their promises, less the benefit resulting to the plaintiffs from being relieved of the necessity of full performance on their part.

If the jury found that the plaintiffs committed the breach, then the defendants would be entitled to recover their damage for the plaintiffs' failure to completely perform which, of course, would give the plaintiffs credit for the part performed by them.

We find no other prejudicial error in the record.

For failure to submit the issue of breach to the jury, and error in giving the special charges, the judgment is reversed. and the cause remanded for further proceedings according to law.

MATTHEWS, PJ, ROSS and HILDEBRANT, JJ, concur in Syllabus, Opinion and Judgment.