Herbert, J.,
dissenting. I am unable to join in the judgment entered in this cause, basically, for two reasons: (1) the judgment in substance overrules long recognized and established principles of law in Ohio, to wit, Roberts v. Montgomery, 115 Ohio St., 502; Scheinesohn v. Lemonek, 84 Ohio St., 424; Cleveland Ry. Co. v. Godfrey, 28 O. L. R., 466; and Reece v. Kyle, 49 Ohio St., 475; and (2) a recent decision of the Supreme Court of the United States, being Brotherhood of Railroad Trainmen v. Virginia, ex rel. Virginia State Bar (April 20, 1964), , 84 S. Ct., 1113.
The per curiam overrules Reece v. Kyle, 49 Ohio St., 475. In that case, Spear, C. J., delivered a scholarly opinion of a unanimous court upon the obstacles that have confronted courts for hundreds of years in Anglo-Saxon judicial history. He pointed out the efforts to throttle the vicious practices of champerty and maintenance but also emphasized the ever-present duty of the courts to protect the weak and dependent from oppression by the powerful. While commenting upon rules necessary to control evils of the past, he warned, in the opinion, at page 487:
“ * * * new conditions arisen by reason of which it has become the interest of the powerful to embarrass and hinder the dependent and weak from obtaining speedy justice in the courts.”
In the case at bar, respondent, over a period of years, and with a large clientele according to the relator, gave financial aid to three- or four needy clients. The importance of financial aid from his lawyer to an injured workman may spell the difference between injustice and justice.
*273 For example, a member of a railroad train crew or yard crew is injured or killed by reason of the negligence of the railroad. The injured man or the dependents, through a fiduciary, contract with a lawyer to represent them in negotiations for settlement or in litigation.
The railroad offers a meager totally inadequate settlement — a small percentage of what a lawful judgment could reasonably be expected. In making this inadequate settlement offer, the claims department of the railroad advises that the railroad can delay final decision for years. In short, the powerful can close the doors of the courts to the weak by reason of the lack of finances of the claimant.
Under the pronouncement in the case at bar, lawyers in Ohio are not permitted to give or loan financial assistance to a client even though the injured employee or the dependents in case of death are in want and hungry.
People, ex rel. Chicago Bar Association, v. McCallum, 341 Ill., 578, 173 N. E., 827, is a case squarely in point.
There, the facts recited in the opinion are amazing. It is well worth reading. The second paragraph of the syllabus states the law of the case in this language:
“ Advancing money to indigent client is not against public policy. The practice of advancing money to the injured client with which to pay living expenses or hospital bills during the pendency of a personal injury case and while he is unable to earn anything, may, in a sense, tend to foment litigation by preventing an unjust settlement from necessity, but there is no authority holding that it is against public policy and no reason why it should be so considered, as a man in indigent circumstances thereby may obtain justice ivhere without such aid he would be unable to do so.” (Emphasis added.)
Under the holding in the case at bar, the doctrine of the McCallum case cannot be followed in Ohio.
Charge 13 and the facts in support thereof are quite simple. One Orlando was a yard employee of the Baltimore & Ohio Railroad. He released the “air” of incoming trains. He had a regular tour of duty. He performed his duties faithfully and well. He was loyal to his employer in his employment. Respondent employed Orlando during some of his off-duty hours and on his own time to interview *274 witnesses and discover the facts and circumstances surrounding episodes wherein clients of the respondent were injured while in the performance of their railroad duties or were killed by reason of the negligence of the employing railroad.
To establish negligence of a railroad causing such an injury or death, witnesses, who thoroughly understand the intricate and complex construction and operation of railroad mechanical devices and equipment, are essential. Such information and such witnesses are necessary to establish a case, for an injured workman or for the dependents of one killed, by testimony by those familiar with railroading and the operation of trains.
Orlando’s employment was not in violation of law. It was thoroughly consistent with enactments of Congress, particularly Section 60, Title 45, U. S. Code, referred to in the per curiam opinion. This law intended to make available information to injured employees and persons in interest. Without the aid of Orlando or some other well-informed person, the respondent would not have the names of necessary witnesses and would be handicapped severely in the presentation of a case of an injured railroad workman or the dependents of one killed by reason of the railroad’s negligence. By his extra work, Orlando helped the injured and the dependents of the dead to secure justice. The per curiam says that Orlando was disloyal to his railroad employer, and that respondent was unworthy of being a lawyer because he used witnesses and information secured by Orlando. The respondent was acting under a law enacted by the United States Congress above mentioned and in furtherance of the administration of justice.
Respondent furnished records to the Internal Revenue Service to show his payments to Orlando in order to deduct the same from his own income tax. It seems to me that records that satisfy the Internal Revenue Service were all that respondent was required to keep. It is said that Orlando was disloyal to his railroad employer by furnishing information and evidence that would compel his employer to respond to the requirements of justice. Orlando was acting in pursuance to and in accordance with a congressional enactment. He was at the same time giving an invaluable service to injured railroad *275 workmen and the dependents of the dead who were represented by the respondent.
“A state could not, by invoking the power to regulate the professional conduct of attorneys, infringe in any way the right of individuals and the public to be fairly represented in lawsuits authorized by Congress to effectuate a basic public interest.” (Emphasis added.) Brotherhood of Railroad Trainmen v. Virginia, ex rel. Virginia State Bar, supra.
Charge number 13 against the respondent, and the facts offered to substantiate it, appear to me to be clearly contrary to the above-quoted principle of law.