**SENTINEL CONSUMER PRODUCTS, INC., Appellant,**

**v.**

**MILLS, HALL, WALBORN & ASSOCIATES, INC., Appellee.**

[Cite as *Sentinel Consumer Prod., Inc. v. Mills, Hall, Walborn & Assoc., Inc.* (1996) 110 Ohio App.3d 211.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 95–L–105.

Decided April 1, 1996.

212

*Kenneth B. Baker,* for appellant.

*Kenneth A. Bossin,* for appellee.

---

JOSEPH E. MAHONEY, Judge.

The following appeal arises from a breach of contract in which appellee, Mills, Hall, Walborn & Assoc., agreed to provide public relations services to appellant, Sentinel Consumer Products, Inc. For the reasons that follow we reverse the judgment of the trial court and remand for further proceedings not inconsistent with this opinion.

Appellant manufactures and sells health and beauty products. In 1993, as the company was approaching its ninetieth year in business, appellant interviewed several public relations firms in order to choose one to promote the company's anniversary. Based on appellee's presentations, appellant, sometime in October of 1993, chose the services of appellee for the company's anniversary promotions.

The parties entered into a public relations agreement whereby appellee agreed to develop a public relations program designed to heighten public awareness of appellant's products. The contract, prepared by appellee, provided that appellant would pay appellee $2,450 per month plus expenses. Appellant was to be billed on the fifteenth day of the month preceding the month in which appellee would provide services. The contract was to begin on February 1, 1994 and continue until January 31, 1995. Thereafter, the contract could be terminated by either party upon thirty days' written notice.

Appellant paid the monthly bills submitted by appellee through March 1994. However, although these bills were paid, appellant was disappointed with the progress made in its promotional anniversary campaign. Appellant presented evidence that appellee missed deadlines, failed to attend scheduled meetings, and altogether ceased working on the campaign. According to appellant, on April 1, 1994, representatives of appellee conveyed to appellant that they were frustrated,

had run out of ideas, and did not know what to do next. Although these same representatives stated that they would be in contact with appellant, appellant inferred from the exchange that appellee had breached the public relations agreement and that appellee did not intend to do further work on the project. The same day, appellant wrote a letter to appellee stating that their contract was "null and void."

On July 27, 1994, appellant filed suit against appellee, alleging breach of contract and misrepresentation. Appellee, on September 29, 1994, filed its answer and counterclaim, alleging that it was appellant who had breached the public relations agreement by appellant's letter of April 1, 1994. Appellee sought $7,675.22 for work it had billed appellant in April 1994 (including the $2,450 monthly fee), $22,050 for the balance of the monthly payments due for May 1994 through January 1995 and $7,500 for the cost of collection. On October 11, 1994, appellant filed its reply to appellee's counterclaim.

On March 6, 1995, appellee filed a motion for summary judgment, pursuant to leave of court. In its motion, appellee argued that appellant's letter of April 1, 1994 was the only breach of the public relations contract and that there was no evidence that appellee had terminated the contract either verbally or in writing. On March 15, 1995, appellant filed its brief in opposition to appellee's motion for summary judgment.

On March 17, 1995, the trial court granted appellee's motion for summary judgment as to liability, but not as to damages. A jury trial was held May 24, 1995 on the sole issue of damages, and the jury awarded appellee $24,500. Appellant has filed a timely notice of appeal and now presents the following assignments of error:

"1. The trial court erred in granting appellee summary judgment when material issues of fact clearly exist.

"2. The trial court erred in improperly instructing the jury as to damages for breach of contract."

In its first assignment of error, appellant argues that material issues of fact exist as to who breached the contract first and, thus, the trial court erred in granting appellee summary judgment on this issue. We agree.

The granting of summary judgment pursuant to Civ.R. 56(C) is appropriate when "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472,

364 N.E.2d 267, 274. "The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. This forces "the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099, citing *Celotex v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. The nonmoving party may not rest upon the allegations or denials of his pleadings; rather he must set forth facts, by affidavit or otherwise, showing that there is a genuine issue for trial. Civ.R. 56(E); *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798.

Appellant argues that a material issue of fact existed as to whether appellee's actions constituted either a breach or an anticipatory breach of the public relations agreement which consequently justified appellant's sending its termination letter of April 1, 1994. Appellee argues, as it did in its motion for summary judgment, that the only clear breach, anticipatory or otherwise, was that of appellant as evidenced by the April 1, 1994 letter of termination.

■■■ A repudiation of a contract must be expressed in clear and unequivocal terms. Therefore, appellant's inference, based on its conversations with appellee's employees on April 1, 1994, that appellee wished to end the public relations agreement is insufficient to establish an anticipatory breach of the contract. *McDonald v. Bedford Datsun* (1989), 59 Ohio App.3d 38, 40, 570 N.E.2d 299, 301. Thus, we limit our discussion, as the trial court did in granting appellee's motion for summary judgment, to whether appellee breached the terms of the contract before appellant's termination letter of April 1, 1994.

In reaching its decision to grant appellee's motion, the trial court looked first to appellee's obligations under the public relations contract. Paragraph one of the contract described appellee's responsibilities as follows:

"1. As your public relations counsel, we will develop a public relations program with the objective of heightening public awareness of Sentinel Products, its merchants and activities.

"Our services will include idea generation, media relations, special events planning and general counsel, other activities necessary to properly position Sentinel Products and its products, and other services needed to achieve the desired objectives. A more detailed listing of our responsibilities is set forth in our proposal dated 10/14/93."

■■■ Neither party provided the trial court with a copy of appellee's proposal of October 14, 1993. Appellant, however, did submit an explicit timetable as to when the above-listed duties were to be performed by appellee. The trial court

acknowledged that the timetable was arguably a part of the public relations agreement. In addition, appellant submitted an affidavit of its president, Michael Klein, who stated that appellee had missed deadlines, failed to attend meetings, and had discontinued working on the project. In evaluating this evidence in conjunction with excerpts of deposition testimony from appellee's employees, the trial court concluded that "[i]t appears [that] this was not a case of nonperformance by [appellee], but rather, subjective dissatisfaction on the part of [appellant]." As a result, the trial court granted appellee's motion for summary judgment as to the question of liability.

■ When deciding whether to grant a motion for summary judgment, a trial court should not evaluate what the evidence "appears" to show. Indeed, it is quite evident from reading the trial court's judgment entry that the court improperly weighed the evidence before it in deciding who first breached the contract. In our opinion, when construing the evidence most strongly in favor of appellant, the nonmoving party, we conclude that reasonable minds could find that appellee was the first to breach the public relations agreement when it failed to meet deadlines which, as the trial court stated, were arguably integrated into the contract. "Where promises in a contract remain unperformed by each party and the evidence is conflicting as to which committed the breach, or first breach, that issue should be submitted to the jury and the jury instructed as to the effect of its finding upon that issue." *Mays v. Hartman* (1947), 81 Ohio App. 408, 37 O.O. 228, 77 N.E.2d 93, paragraph four of the syllabus. In other words, a material issue of fact was raised. Consequently, appellant's first assignment of error has merit.

In its second assignment of error, appellant argues that the trial court erred in improperly instructing the jury on damages. This alleged error occurred when the trial court refused to give appellant's proposed instruction to subtract the savings appellee realized by not having to complete its performance of the public relations contract with appellant, from any award to appellee. Because this instruction was not given, appellant asserts the jury was misled into returning a verdict in favor of appellee for $24,500 (which appellant believes the jury arrived at by multiplying appellee's monthly service fee, $2,450, by the ten remaining months on the contract) without considering the costs appellee would have incurred in performing its part of the contract. We agree.

■ The monthly fee appellee charged appellant for services was for work to be performed the following month. Therefore, the public relations agreement was executory in nature, and appellant would not be liable for the entire contract price upon a breach. Rather appellant would be liable for the value of the contract price less any savings appellee received from not having to perform its

part of the contract. As the court held in *Channel Dry, Inc. v. Haver* (1990), 70 Ohio App.3d 197, 590 N.E.2d 868:

" 'Where a defendant's repudiation of a contract, before the plaintiff's substantial performance, relieves plaintiff of the obligation of further performance, plaintiff is not entitled to recover as such the unpaid part of the full compensation which the contract provided he should receive for such further performance. In an action on the contract, plaintiff is entitled only to recover damages for defendant's breach of contract. Such damages may include the further compensation plaintiff would have received under the contract if it had been performed, less the value to plaintiff of his being relieved of the obligation of completing performance.' " *Id.* at 201, 590 N.E.2d at 870–871, quoting *Allen, Heaton & McDonald, Inc. v. Castle Farm Amusement Co.* (1949), 151 Ohio St. 522, 39 O.O. 330, 86 N.E.2d 782, paragraph one of the syllabus.

Appellee argues that this theory is commercially unreasonable in today's business world. In support of this argument, appellee points to several examples, such as the home security and cellular telephone industries, which offer to install equipment for free if the customer signs a multiyear contract with the company. Appellee argues that, based on *Haver*, customers with these types of contracts could breach at will and suffer no consequences. However, customers breaching these types of contracts, assuming that the agreements contained no penalty for a breach, would be required to pay to those companies the profits to which the business would be entitled over the life of the contract. To allow those companies to collect damages above their lost profits, as appellee would have this court do, would allow businesses to reap a windfall for services that were never performed.

Finally, appellee argues that appellant is unable to show, for certain, what the jury award represents because of the two-issue rule. This rule has been defined as follows:

" '[E]rror in the charge of the court dealing exclusively with one of two or more complete and independent issues required to be presented to a jury in a civil action will be disregarded, if the charge in respect to another independent issue which will support the verdict of the jury is free from prejudicial error, unless it is disclosed by interrogatories or otherwise that the verdict is in fact based upon the issue to which the erroneous instruction related.' *Bush v. Harvey Transfer Co.* (1946), 146 Ohio St. 657 [33 O.O. 154, 67 N.E.2d 851], paragraph three of the syllabus." *Pulley v. Malek* (1986), 25 Ohio St.3d 95, 97, 25 OBR 145, 147, 495 N.E.2d 402, 404.

As previously noted, appellee sought damages in the amount of $7,675.22 for work it billed in April 1994, $22,050 for the balance of its monthly service fee, and $7,500 representing its cost of collection. Appellee asserts that, without

having requested jury interrogatories, appellant is unable to show prejudice from any erroneous jury instruction as to one of its claims of damages. However, based on the specific dollar amount of the award, it is evident that the jury factored appellee's remaining monthly service fees into the verdict. Consequently, as the other independent issues do not support the jury's verdict, the two-issue rule does not prevent this court from finding that appellant was prejudiced from the court's jury charge. Appellant's second assignment of error has merit.

Based on the foregoing, the judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this court's opinion.

*Judgment reversed*
*and cause remanded.*

FORD, P.J., and CHRISTLEY, J., concur.