JOURNAL ENTRY AND OPINION
Plaintiff-appellant Burke Associates appeals from the trial court's partial summary judgment finding that quantum meriut applied to its breach of contract action against defendant-appellee Koinonia Homes, Inc. and the subsequent award of $600. Plaintiff contends it was entitled to damages for loss of the benefit of the bargain due to defendant's repudiation of the contract. We find merit to the appeal and reverse and remand for further proceedings.
Pursuant to the App.R. 9 (D) Agreed Statement, the facts of the case are as follows. Plaintiff is a corporation which specializes in third party workers' compensation administration. Defendant is a not-for profit corporation which provides seven group homes and supportive living services to mentally retarded adults supported by County, State, Medicare funds and private donations.
On January 26, 1990, the plaintiff sent a letter to a member of defendant's board of trustees offering its services to attempt to reduce defendant's workers' compensation rates for a percentage of any savings. On February 6, 1990, the defendant accepted the plaintiff's offer and signed the acceptance form which stated as follows:
 Upon acceptance of this offer, Burke Associates, Inc. will survey your last four experience years in an attempt to reduce your cost of Workers' Compensation, either through premium refunds or future rate reductions.
 Our fee for this service will be two hundred dollars and fifty percent of the savings generated by retroactive rate reductions and savings two years forward.
 Settlement for this work shall be made when evidence is received by The Bureau of Workers' Compensation that either your company's account has been credited or a refund check has been issued.
On February 15, 1990, plaintiff billed the defendant $200, which was paid promptly.
On May 30, 1990, plaintiff sent a letter on defendant's behalf to the Bureau of Worker's Compensation. This letter requested that several "manual numbers" which were classifications of the group homes, i.e. hospital, domestic household and children's home, be added. The letter also requested "credit for the last two years on the last reporting period." The letter explained: "What we are asking is that adjustments be made for the last two years of moneys for overpayment to Koinona Homes Inc."
Sometime after this letter was sent, for reasons not appearing of record, defendant discontinued the services of the plaintiff. Then, on July 16, 1990, the defendant independently requested a rate inspection. The defendant requested to be categorized as a "philanthropic skilled care home" instead of a "extended care facility." This inspection took place in December 1990, and as a result, the defendant was reclassified. Defendant's rates were subsequently readjusted downward. Plaintiff admits that it did not participate in the preparation for the field audit or the field audit performed by the Bureau.
On February 24, 1997, the plaintiff filed the instant breach of contract action against the defendant. Plaintiff contended that pursuant to the contract it was owed $58,292.33 for savings due to the reclassification of defendant two years back, i.e., for the years 1989 and 1990. Plaintiff also alleged it was due $48,442.86 for 1991 and 1992, which represented 50% of the savings two years forward under the contract.
After a pretrial hearing was conducted, the parties were ordered to file partial summary judgments on the issue of whether quantum meruit applied when a contingency fee contract is rescinded. By analogy to the law of attorney-client fee cases, the defendant argued that quantum meruit was the correct measure of damages. Plaintiff argued it was not in the legal profession and that it should be awarded the amount that the plaintiff would have earned if defendant had not repudiated the contract.
The trial court, without opinion, granted the defendant's motion for partial summary judgment and found that plaintiff's recovery was limited to quantum meriut, not the contract amount of 50% of the savings to defendant. A bench trial was held and the trial court determined the value of plaintiff's services was $600 for which judgment was entered.
Plaintiff timely appealed from this award.
 I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE KOINONIA HOMES' MOTION FOR PARTIAL SUMMARY JUDGMENT.
In its first assignment of error, the plaintiff argues the trial court erred in finding the doctrine of quantum meruit applied and argues that the case of Fox Associates v. Purdon
(1989), 44 Ohio St.3d 69, upon which the defendant relied in arguing the application of quantum meruit, is specifically limited to contingency fee arrangements between attorneys and their clients. We find this assignment of error has merit.
Ordinarily, when there is a written contract, a party cannot pursue the breaching party on the basis of quantum meruit.Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51,55; Pawlus v. Bartrug (1996), 109 Ohio App.3d 796, 800. In Fox Associates v. Purdon, supra, the Supreme Court created an exception when there is a contingency fee agreement between an attorney and client. The Court reasoned as follows:
 Under present Ohio law, a client may dismiss an attorney at any time, but the existence or nonexistence of just cause is relevant with regard to the attorney's right to compensation or damages. Where an express contract exists between the attorney and client breach of contract without cause requires full payment of the contract price, even if the attorney has not yet rendered services.
* * *
 The overriding consideration in the attorney-client relationship is trust and confidence between the client and his or her attorney. The right to discharge one's attorney would be of little value if the client were liable for the full contract price. To force such an agreement into the conventional status of commercial contracts ignores the unique fiduciary relationship created by an attorney's representation of a client. * * * Under the rule of quantum meruit, the client is protected since the discharge of an attorney is not always caused by a client's dissatisfaction with the quality of the service rendered but rather, may result from the client's lack of faith and trust or confidence in the attorney.
* * *
 Neither does the quantum meruit rule create a threat that the discharged attorney will not be compensated for services rendered before discharge occurs.
The Court concluded that this "new rule":
 [S]trikes the proper balance by providing clients greater freedom in substituting counsel, and in promoting confidence in the legal profession while protecting the attorney's right to be compensated for services rendered.
Id. at 71-72. Based on the foregoing, the exception is clearly only applicable to attorney/client contingency fee contracts.
In the instant case, there was not an attorney/client relationship. Merely because the plaintiff was required by Ohio Admin. Code 4121-2-01 (A) (5) to follow the Code of Professional Responsibility if it appeared before the Bureau of Workers' Compensation, does not make the plaintiff an attorney or law firm. Nor does it create the traditional fiduciary relationship that exists between attorneys and their clients. Although the contract obligates the plaintiff to attend workers' compensation hearings on behalf of the defendant, nothing is said about appearing in court. Since there is no evidence that plaintiff was, in fact, providing legal services, traditional contract law applies to the written contracts at hand.
As stated by the court in Channel Dry, Inc. v. Haver (1990),70 Ohio App.3d 197, 201, citing Allen, Heaton McDonald, Inc. v.Castle Farm Amusement Co. (1949), 151 Ohio St. 522, paragraph one of syllabus:
 "Where a defendant's repudiation of a contract, before plaintiff's substantial performance, relieves plaintiff of the obligation of further performance, plaintiff is not entitled to recover as such the unpaid part of the full compensation which the contract provided he should receive for such further performance. In an action on the contract, plaintiff is entitled only to recover damages for defendant's breach of contract. Such damage may include the further compensation plaintiff would have received under the contract if it had been performed, less the value plaintiff of his being relieved of the obligation of the performance."
These principles are consistent with traditional principles of contract law and the damages which give the non-breaching party the benefit of his bargain. As stated in Cleveland Co. v.Standard Amusement Co. (1921), 103 Ohio St. 302, 387-88:
 * * * [W]here one party repudiates a continuing contract the injured party may (1) treat the contract as rescinded and recover on a quantum meruit so far as he has performed, or (2) keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform at the end of the time specified in the contract, and sue and recover under the contract; or (3) he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue to recover as far as he has performed and for the profits he would have realized if he had not been presented from performing. (Emphasis added).
When the party receives notice of repudiation, the party can not continue to perform and recover the entire contract price. SeeJames v. Board of Com'rs of Allen Co. (1886), 44 Ohio St. 226;Channel Dry, Inc., supra. However, when the other party repudiates, the party who has partly performed is entitled to the contract price less the costs saved by being relieved of further performance. Channel Dry, supra; Allen, Heaton McDonald v.Castle Farm Amusement Co. (1949), 151 Ohio St. 522; SentinelConsumer Prod. Inc. v. Mills, Hall, Walborn Assoc., Inc.
(1996), 110 Ohio App.3d 211, 217.
We note that review of the limited record before us does not indicate the reasons, if any, for which defendant terminated the contract. There may be a genuine issue of fact as to whether the contract was, in fact, breached or was terminated for just cause, a matter about which we intimate no conclusion.
Plaintiff's Assignment of Error I is sustained and the matter will be reversed and remanded for trial on the merits and application of the law hereinbefore cited to any damage issues.
 II. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THE REASONABLE VALUE OF THE SERVICES RENDERED BY APPELLANT WAS $600.
Given our disposition of Assignment of Error I, this assignment of error is moot. App.R. 12 (A) (1) (c).
Judgment reversed and remanded to the trial court for further proceedings consistent with this opinion.
It is ordered that appellant recover of appellee its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
O'DONNELL. J., CONCURS.
 DYKE. J., DISSENTS. (SEE DISSENTING OPINION ATTACHED).
 __________________________________ JAMES M. PORTER ADMINISTRATIVE JUDGE