BURKE & ASSOCIATES, INC., Appellant,

v.

KOINONIA HOMES, INC., Appellee.

[Cite as *Burke & Assoc., Inc. v. Koinonia Homes, Inc.* (1999), 135 Ohio App.3d 683.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 74754.

Decided Nov. 15, 1999.

*Sammon & Bolmeyer Co., L.P.A.* and *James P. Sammon,* for appellant.

*Douglass & DeFoy* and *James R. Douglass,* for appellee.

JAMES M. PORTER, Administrative Judge.

Plaintiff-appellant, Burke & Associates, Inc., appeals from the trial court's partial summary judgment finding that *quantum meruit* applied to its breach of contract action against defendant-appellee, Koinonia Homes, Inc., and the subsequent award of $600. Plaintiff contends that it was entitled to damages for loss of the benefit of the bargain due to defendant's repudiation of the contract. We find merit to the appeal and reverse the judgment and remand the cause for further proceedings.

Pursuant to the App.R. 9(D) agreed statement, the facts of the case are as follows. Plaintiff is a corporation that specializes in third-party workers' compensation administration. Defendant is a not-for-profit corporation that provides seven group homes and supportive living services to mentally retarded adults supported by county, state, and Medicare funds and private donations.

On January 26, 1990, the plaintiff sent a letter to a member of defendant's board of trustees offering its services to attempt to reduce defendant's workers' compensation rates for a percentage of any savings. On February 6, 1990, the defendant accepted the plaintiff's offer and signed the acceptance form which stated as follows:

"Upon acceptance of this offer, Burke & Associates, Inc. will survey your last four experience years in an attempt to reduce your cost of Workers' Compensation, either through premium refunds or future rate reductions.

"Our fee for this service will be two hundred dollars and fifty percent of the savings generated by retroactive rate reductions and savings two years forward.

"Settlement for this work shall be made when evidence is received by The Bureau of Workers' Compensation that either your company's account has been credited or a refund check has been issued."

On February 15, 1990, plaintiff billed the defendant $200, which was paid promptly.

On May 30, 1990, plaintiff sent a letter on defendant's behalf to the Bureau of Worker's Compensation. This letter requested that several "manual numbers," which were classifications of the group homes, *i.e.*, hospital, domestic household and children's home, be added. The letter also requested "credit for the last two years on the last reporting period." The letter explained: "What we are asking is that adjustments be made for the last two years of moneys for overpayment to Koinonia Homes Inc."

Sometime after this letter was sent, for reasons not appearing of record, defendant discontinued the services of the plaintiff. Then, on July 16, 1990, the defendant independently requested a rate inspection. The defendant requested to be categorized as a "philanthropic skilled care home" instead of a "extended care facility." This inspection took place in December 1990, and as a result, the defendant was reclassified. Defendant's rates were subsequently readjusted downward. Plaintiff admits that it did not participate in the preparation for the field audit or the field audit performed by the Bureau.

On February 24, 1997, the plaintiff filed the instant breach-of-contract action against the defendant. Plaintiff contended that pursuant to the contract it was owed $58,292.33 for savings due to the reclassification of defendant two years back, *i.e.*, for the years 1989 and 1990. Plaintiff also alleged that it was due $48,442.86 for 1991 and 1992, which represented fifty percent of the savings two years forward under the contract.

After a pretrial hearing was conducted, the parties were ordered to file partial summary judgments on the issue of whether *quantum meruit* applied when a contingency fee contract is rescinded. By analogy to the law of attorney-client fee cases, the defendant argued that *quantum meruit* was the correct measure of damages. Plaintiff argued that it was not in the legal profession and that it should be awarded the amount that the plaintiff would have earned if defendant had not repudiated the contract.

The trial court, without opinion, granted the defendant's motion for partial summary judgment and found that plaintiff's recovery was limited to *quantum meruit*, not the contract amount of fifty percent of the savings to defendant. A bench trial was held and the trial court determined that the value of plaintiff's services was $600, for which judgment was entered.

Plaintiff timely appealed from this award.

"I. The trial court erred in granting defendant–appellee Koinonia Homes' motion for partial summary judgment."

■ In its first assignment of error, the plaintiff argues that the trial court erred in finding the doctrine of *quantum meruit* applied and argues that the case of *Fox & Assoc. Co., L.P.A. v. Purdon* (1989), 44 Ohio St.3d 69, 541 N.E.2d 448,

upon which the defendant relied in arguing the application of *quantum meruit*, is specifically limited to contingency fee arrangements between attorneys and their clients. We find that this assignment of error has merit.

█ Ordinarily, when there is a written contract, a party cannot pursue the breaching party on the basis of *quantum meruit*. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 55, 544 N.E.2d 920, 924; *Pawlus v. Bartrug* (1996), 109 Ohio App.3d 796, 800, 673 N.E.2d 188, 190–191. In *Fox & Assoc. v. Purdon, supra,* the Supreme Court created an exception when there is a contingency fee agreement between an attorney and client. The court reasoned as follows:

"Under present Ohio law, a client may dismiss an attorney at any time, but the existence or nonexistence of just cause is relevant with regard to the attorney's right to compensation or damages. Where an express contract exists between the attorney and client, breach of contract without cause requires full payment of the contract price, even if the attorney has not yet rendered services.

" * * *

"The overriding consideration in the attorney-client relationship is trust and confidence between the client and his or her attorney. The right to discharge one's attorney would be of little value if the client were liable for the full contract price. To force such an agreement into the conventional status of commercial contracts ignores the unique, fiduciary relationship created by an attorney's representation of a client.* * * Under the rule of *quantum meruit*, the client is protected since the discharge of an attorney is not always caused by a client's dissatisfaction with the quality of the service rendered but rather, may result from the client's lack of faith and trust or confidence in the attorney.

" * * *

"Neither does the *quantum meruit* rule create a threat that the discharged attorney will not be compensated for services rendered before discharge occurs." *Id.* at 71–72, 541 N.E.2d at 449–450.

The court concluded that this "new rule" "strikes the proper balance by providing clients greater freedom in substituting counsel, and in promoting confidence in the legal profession while protecting the attorney's right to be compensated for services rendered." *Id.* at 72, 541 N.E.2d at 450.

Based on the foregoing, the exception is clearly applicable only to attorney/client contingency fee contracts.

In the instant case, there was not an attorney/client relationship. Merely because the plaintiff was required by Ohio Adm.Code 4121–2–01(A)(5) to follow the Code of Professional Responsibility if it appeared before the Bureau of

Workers' Compensation does not make the plaintiff an attorney or law firm. Nor does it create the traditional fiduciary relationship that exists between attorneys and their clients. Although the contract obligates the plaintiff to attend workers' compensation hearings on behalf of the defendant, nothing is said about appearing in court. Since there is no evidence that plaintiff was, in fact, providing legal services, traditional contract law applies to the written contracts at hand.

As stated by the court in *Channel Dry, Inc. v. Haver* (1990), 70 Ohio App.3d 197, 201, 590 N.E.2d 868, 870–871, citing *Allen, Heaton & McDonald, Inc. v. Castle Farm Amusement Co.* (1949), 151 Ohio St. 522, 39 O.O. 330, 86 N.E.2d 782, paragraph one of the syllabus:

"Where a defendant's repudiation of a contract, before plaintiff's substantial performance, relieves plaintiff of the obligation of further performance, plaintiff is not entitled to recover as such the unpaid part of the full compensation which the contract provided he should receive for such further performance. In an action on the contract, plaintiff is entitled only to recover damages for defendant's breach of contract. Such damages may include the further compensation plaintiff would have received under the contract if it had been performed, less the value to plaintiff of his being relieved of the obligation of completing the performance."

These principles are consistent with traditional principles of contract law and the damages which give the nonbreaching party the benefit of his bargain. As stated in *Cleveland Co. v. Std. Amusement Co.* (1921), 103 Ohio St. 382, 387–388, 133 N.E. 615, 616:

"[W]here one party repudiates a continuing contract the injured party may (1) treat the contract as rescinded and recover on a quantum meruit so far as he has performed, or (2) keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform at the end of the time specified in the contract, *and sue and recover under the contract*; or (3) he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue to recover as far as he has performed and for the profits he would have realized if he had not been presented from performing." (Emphasis added.)

■ When the party receives notice of repudiation, the party cannot continue to perform and recover the entire contract price. See *James v. Allen Cty. Bd. of Commrs.* (1886), 44 Ohio St. 226, 6 N.E. 246; *Channel Dry, Inc., supra*. However, when the other party repudiates, the party who has partly performed is entitled to the contract price less the costs saved by being relieved of further performance. *Id.; Allen, Heaton & McDonald*, 151 Ohio St. 522, 39 O.O. 330, 86 N.E.2d 782; *Sentinel Consumer Prod., Inc. v. Mills, Hall, Walborn & Assoc., Inc.* (1996), 110 Ohio App.3d 211, 217, 673 N.E.2d 967, 971.

We note that review of the limited record before us does not indicate the reasons, if any, for which defendant terminated the contract. There may be a genuine issue of fact as to whether the contract was, in fact, breached or was terminated for just cause, a matter about which we intimate no conclusion.

Plaintiff's Assignment of Error I is sustained, the judgment will be reversed and the cause remanded for trial on the merits and application of the law hereinbefore cited on any damage issues.

"II. The trial court abused its discretion in finding that the reasonable value of the services rendered by appellant was $600."

Given our disposition of Assignment of Error I, this assignment of error is moot. App.R. 12(A)(1)(c).

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment accordingly.*

O'DONNELL, J., concurs.

DYKE, J., dissents.

DYKE, Judge, dissenting.

Respectfully, I dissent. I would affirm the trial court's grant of partial summary judgment in favor of appellee. The rule set out in *Fox & Assoc. Co., L.P.A. v. Purdon* (1989), 44 Ohio St.3d 69, 541 N.E.2d 448, for attorney-client contingency fee contracts should apply in this case. The Code of Professional Responsibility must be followed by those representing employers before the Bureau of Workers' Compensation, regional boards of review and the Industrial Commission. Ohio Adm.Code 4121-2-01(A)(5). Therefore, such agents should be subject to the rules concerning fees set out in the Code of Professional Responsibility. *Fox* is based upon the rules set out in the Disciplinary Code.

The majority states that the amount of damages recoverable by appellant would be the contract price less the costs saved by being relieved of further performance. See *Channel Dry, Inc. v. Haver* (1990), 70 Ohio App.3d 197, 590 N.E.2d 868; *Allen, Heaton & McDonald v. Castle Farm Amusement Co.* (1949), 151 Ohio St. 522, 39 O.O. 330, 86 N.E.2d 782; *Sentinel Consumer Prod., Inc. v. Mills, Hall, Walborn & Assoc., Inc.* (1996), 110 Ohio App.3d 211, 217, 673 N.E.2d 967, 971. In the case of a contingency fee contract for services, it may be impossible to determine the cost savings for relief from further performance. See *Scheinesohn v. Lemonek* (1911), 84 Ohio St. 424, 95 N.E. 913; *Roberts v. Montgomery* (1926), 115 Ohio St. 502, 154 N.E. 740. That is why before *Fox,*

courts held that if a client unjustly repudiates a contingency fee contact for legal services, the attorney is entitled to recover the full contract price. *Scheinesohn, Roberts, supra.* In this case, it is probably impossible to determine how much work appellant would have to perform in order to recover cost savings for appellee. The equities of the situation demand that the rule of *Fox* should apply.

Appellee did not demonstrate that the trial court abused its discretion in finding that the reasonable value of services rendered was $600. Appellant did not file a copy of the trial transcript. Without knowing what evidence was presented, this court is unable to find that the trial court abused its discretion and must presume regularity. *Wozniak v. Wozniak* (1993), 90 Ohio App.3d 400, 409, 629 N.E.2d 500, 506; *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 219–220, 400 N.E.2d 384, 385–386.

Accordingly, I would overrule appellant's assignments of errors and affirm the decision of the trial court.