Judge Grimke
delivered the opinion of the court:
This cause has been argued with great ability, and I am obliged to the counsel for the assistance they have afforded me in the investigation of a very difficult department of the law. The law, with regard to the specific performance of contracts, has been surrounded with so much uncertainty that it is almost impossible to extract from the reported cases any definite rule to guide us in our researches. We are compelled to say, as was said by Sir Samuel Romilly when applied to for advice, that he would give an answer to the questions propounded to him, when the precise point had been determined. In equity jurisprudence, we expect to find distinctions less rigorous than 'are to be met with in a court of law, because it is one object of that jurisdiction to mitigate-the unyielding and inflexible temper of the common law, and when this is attempted, we come necessarily to deal more with the intentions of men, and to make inquiry into what may be the consequences of their actions, instead of confining ourselves to a strict and literal interpretation of their contracts. . But it is evident that this course, unless conducted with the greatest prudence and discretion, will be calculated to defeat its own object, and that instead of introducing the genuine principles of equity into our-jurisprudence, we will render it more dark and intricate than it was before. The specific performance of contracts constitute a. great head of chancery relief, and yet to this day, when the question is asked whether time is ever of the essence of the contract, we are disposed to say with Sir Samuel Romilly that we will *384 answer *the question whenever the precise point is determined.
Lord Uarkwicke, it is said, first laid down the rule in Gibson v. Patterson, 1 Atk. 12, that time is not of the essence of the contract, but Lord Loughborough, in Lloyd v. Collet, 4 Br. C. C. 469, says he had looked into Lord Hardwicke’s note book, and that no such dictum is to be found; that the case was a clear one for the complainant, without any reference to the lapse of time; and that it was determined entirely on the evidence, of which the reporter has taken no notice. Nevertheless, Lord Eldon, in Levy v. Lindo, 3 Meriv. 84, observes that Lord Thurlow, “ on occasions without number,” did declare that time was immaterial in contracts. It is easy to see, however, that there are reasons in Great Britain for holding this doctrine, which do not exist in this country. There titles are exceedingly complicated, in consequence of their refined and artificial modes of conveyance, and they are not all on record as they are with us. The consequence is, that it is a matter of great labor, and one which requires time, to make out what is called an abstract of the title. Most of the English cases, when examined, will be found to turn on this point. Even in Gregson v. Biddle, before Lord Thurlow, in 1784 (which contains the strongest declaration he ever made on this subject), that was the case. There was an outstanding legal title which could not be got in within the two months. It was the ease also in Gibson v. Patterson, and although the dictum attributed to Lord Hardwicke in that case, has been denied, yet I see no improbability in supposing that he-made it. Where the titles to real estate are so universally intricate, and so well known to be so, it does not seem very unreasonable to suppose that a purchaser had made allowance for it. The consequence is, that the English courts were disposed to regard time only as a circumstance and not as possessing sufficient force of itself to avoid the contract. But this rule was soon found to be attended with infinite mischief, and that in endeavoring to do justice, injustice would be inevitably done. Accordingly, in Lloyd v. Collet, 4 Br. C. C. 469, which was the first well-considered case on this subject, it was held that, although the conduct of the parties, inevitable accident, etc., might be a ground of relief, yet, that it was a very different thing to say the appointment of a day should have no effect. The chancellor says, “ if a given default-will not do, what length of time will do ? ” “ The plaintiff says, by *385 nay own default an equity *has arisen to mo. It is a singular head of equity.” And this doctrine has been followed up and • sustained by Harrington v. Wheeler, 4 Ves. 686; Omerod v. Hard-man, 5 Yes. 722; Guest v. Homfray, 5 Ves. 818; and Alley v. Deschampe, 13 Ves. 225. In this last case Lord Erskine says, “my judgment proceeds upon a plain principle, that a bill for specific performance of an agreement will not be endured, nothing farther having been done than the payment of one hundred pounds.” “ It would be a very dangerous thing to permit parties to lie by, to see whether the contract will prove a gaining or losing bargain.” And I believe the mind of every man who has reflected much on this subject has been convinced that this is the correct •view. The great difficulty consists, not in deciding what is right, but in settling a doctrine which has hitherto been considered unsettled. You are afraid of taking parties by surprise. As long as a rule of law is attended with uncertainty, both parties seem to have a right to take advantage of that uncertainty. But it is obvious that this can not always continue to be the case. ’ No court could be true to itself, much less to the interests of those whom it is bound to protect, if it were instrumental in confusing the boundaries of the law.
In all the cases which I have referred to, except Gregson v. Biddle, there was a clause inserted in the contract expressly declaring •time to be.of its essence. That is the case in the present instance •also. It is expressly agreed by the parties, that “ on failure to make the payments the agreement shall be considered null and void. Gregson v. Biddle, I have shown, has been overruled. In Seton v. Slade, 7 Ves. 265, there was a clause inserted, that on failure to pay, the proprietor should be at liberty to resell. Lord Eldon says: “I incline much to think, notwithstanding what is said in Gregson v. Biddle, that time may be made of the essence of the contract.” A specific performance, however, was decreed*; first, ■because although the vendor, on non-compliance with the conditions, had liberty to resell; yet the contract was not declared (as •in this case) to be at an-end, a distinction which I confess does not seem to me to have much force; and secondly, that tho vendor ■had done acts which unequivocally amounted to a waiver of any default on the part of the plaintiff: so that this case also over\.-ruled the dictum in Gregson v. Biddle.
In Vernon v. Stephens, 2 P. Williams, it is denied that any *386 agreement can be so framed as to make time of the ^essence of a contract. But it was unnecessary to make any such declaration ; for there, also, there were unequivocal acts of waiver. An idea seems to have been entertained that such an agreement would, be an attempt to oust the court of chancery of its' jurisdiction. But surely the jurisdiction of that court does not depend upon the mere circumstance that a contract has been made, and that the specific performance of contracts belongs to it exclusively. It depends also upon the fact whether the contract is such as to entitle it to be executed. It is now admitted that the lapse of' time is a matter which must be taken into consideration, even-where it is not declared to be of the essence of the agreement. Time, then, is an important ingredient in contracts. Would it not, then, be extraordinary if the parties were not permitted to declare it so. A mere agreement to refer a matter to arbitration would not deprive the courts of their jurisdiction ; but an agreement that there should be no suit at law or in equity would do so; because it would be simply giving effect to a plain contract without violating any rule of public policy. Indeed, I take it that no rule is now more firmly established than that parties may make time of the essence of the agreement. Such a rule seems to be absolutely necessary to the administration of justice, and even to the being able to see our way with any degree of clearness in the interpretation of contracts. The very desire to introduce a principle of equity and a liberality of construction in expounding those contracts where the intentions of the parties remain doubtful; ought to constrain us to pause at so„me boundary beyond this uncertain field of conjecture; otherwise, instead of applying a rule of equity professing to be founded upon the intentions of the parties, we shall openly proclaim that we have no regard to those intentions when they are expressed in the most unequivocal manner. In Jackson v. Ligon, 3 Leigh, 187, the chancellor says : “ That the ■ pai’ties may make time of the essence of the agreement is now clearly admitted, and seems to follow from their unquestioned right to frame their contracts as they please.” It is not like a ■ case of forfeiture; the penalty of a bond, for instance, from which a court of equity will relieve, on the same principles of public-policy, as have occasioned the enactment of usury laws.
But the leading case on this subject is Benedict v. Lynch, 1 Johns. Ch. Cas. 370. It is an American case, and I shall always- *387 *give a preference to the American over the English cases, other things being equal; for I do not believe that a judge is bound to deal only with abstract principles of law. It is his duty also to understand the habits and condition of the people among whom he lives, and this he will be best able to do by studying the adjudications which have been made in his own country. Benedict v. Lynch contains the most thorough and perspicuous examination of the law on this subject of any case which is extant. There was a stipulation “that if the plaintiff failed in either of his payments the agreement was to be void ;” and the chancellor upheld the stipulation and dismissed the bill. But it is said there is a difference between the stipulation in that case and in the one now before the court; that in the former the agreement was to be void if the plaintiff failed in either of his payments, and in the latter it is to be void if he fail to make the payments. But no human ingenuity will be able to satisfy the mind that there is any substantial or even any plausible difference between the phraseology in the two contracts. The last secures the punctual performance of ail the payments; the plaintiff has failed to pay the third installment, and if the whole includes the parts, nothing is more certain than that he has neglected to make the payments. How, then, can it be said that the complainant is entitled to a specific performance when he has been guilty of a violation of his contract — a contract drawn with the most guarded precision and care, and intended to impose terms upon the respondent as well as upon himself? The law is intended to be a help to morality; it is intended to set an example to the community, with how much ease the great principles of justice may he maintained and dispensed, and of how great importance it is to the welfare of individuals that they should be inviolably preserved. But if a loose morality should begin here, and a loose administration of the law is nothing more or less than a loose morality, it will be impossible for parties to feel that degree of confidence in our courts which they are entitled to feel. And however the technical forms in which our law is wrapped up, may contribute to blunt our feelings as men, yet it is impossible for an upright tribunal not to desire both to do justice and to inspire confidence. On the whole, ■the conclusion to which we are brought is, that the parties have made time of the essence of this contract; that the complainant has violated the ageement by failing to pay *the third in *388 stallment, and the bill is therefore dismissed, but with a decree for the payment back of the second installment, since that also was the stipulation of the parties. ■