[Cite as *Franklin Mgt. Industries, Inc. v. Far More Properties, Inc.*, 2014-Ohio-5437.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 101397

---

**FRANKLIN MANAGEMENT
INDUSTRIES, INC.**

PLAINTIFF-APPELLANT

vs.

**FAR MORE PROPERTIES, INC., ET AL.**

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-08-666009

**BEFORE:** Stewart, J., Celebrezze, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 11, 2014

**ATTORNEY FOR APPELLANT**

Michael R. Houston
Houston Legal Counsel, Inc., L.P.A.
2450 One Cleveland Center
1375 East Ninth Street
Cleveland, OH    44114


**FOR APPELLEES**

**Attorneys for Far More Properties, Inc., et al.**

Jon J. Pinney
Sarah Gabinet
Melissa Yasinow
Kohrman Jackson & Krantz, P.L.L.
One Cleveland Center, 20th Floor
1375 East Ninth Street
Cleveland, OH    44114

**Attorney for Lee G. Seidman, et al.**

Justine L. Konicki
One Cleveland Center, 20th Floor
1375 East Ninth Street
Cleveland, OH    44114

MELODY J. STEWART, J.:

**{¶1}** The issue in this appeal is whether a mutually agreed- upon deadline in a contract for payment is absolute. Acknowledging that a payment that came two days late was untimely, the court nonetheless found that the payment constituted "reasonable compliance" with a contract that not only included a date deadline, but a time deadline as well. We find that the court reached this conclusion in error because, though good intentioned, the court ignored the express terms of the parties' agreement and failed to give one party the benefit of its bargain.

I

**{¶2}** The underlying facts are undisputed. In February 2009, appellant Franklin Management Industries, Inc. ("FMI") received an arbitration award against Lee G. Seidman, James G. Pilla, Motorcars Infiniti, Inc., Motorcars East, Inc., Far More Properties, Inc., International Motorcars, Inc., and Motorcars Group, (collectively "Motorcars") in the amount of $1.1 million including postjudgment interest and costs. FMI had difficulty collecting its judgment — a difficulty that the court believed was caused by Motorcars' "pattern of obstructionism throughout these proceedings." Judgment entry at 3. By January 2012, FMI had yet to collect its award.

**{¶3}** The parties entered into a settlement agreement and mutual release that provided that Motorcars would make three payments of $350,000 according to the following schedule:

> $350,000 no later than January 5, 2012
> $350,000 no later than January 4, 2013
> $350,000 no later than January 4, 2014

Settlement Agreement ¶ 1. The settlement agreement also provided that:

> Notwithstanding anything to the contrary in this Agreement, in the event that any of the three installment payments referenced in paragraph 1, above, is not received by FMI by 5:00 p.m. EST on January 4[1] of 2012, 2013 or 2014, this Agreement

---

[1]The January 2012 payment date differs in paragraphs 1 and 7 of the settlement agreement.

and Mutual Release shall be null and void, and FMI shall have the right to immediately file with the Clerk of Court the applicable consent judgments attached to this Agreement as Exhibits B, C and D, and to execute and collect on such judgment to the full extent permitted by law. If the first payment is not received, the consent judgment attached as Exhibit B shall be applicable. If the second payment is not received, the consent judgment attached as Exhibit C shall be applicable. If the third payment is not received, the consent judgment attached as Exhibit D shall be applicable. Absent a default in payment as described herein, FMI shall take no action on these consent judgments.

Settlement Agreement ¶ 7.

{¶4} Motorcars made the 2012 and 2013 payments by the deadline as established by the terms of the settlement agreement. As the deadline for 2014 approached, the agent for Motorcars, knowing that he would be out of the country at the deadline for the final payment to be made, arranged for Huntington Bank to deliver a certified check to FMI on Friday, January 3, 2014. For unexplained reasons, Huntington Bank failed to deliver the check as promised. The 5:00 p.m. deadline on January 4, 2014 (the date was a Saturday) passed. On January 6, 2014, FMI contacted Motorcars' agent to advise him that the check had not been delivered. The agent contacted the bank, and the check was delivered before noon on January 6, 2014.

{¶5} Invoking the consent judgment clause of the settlement agreement, FMI asked the court to enter a consent judgment consistent with Exhibit D to the settlement agreement. That exhibit stated:

Waiving any and all defenses, garnishees Lee G. Seidman and James G. Pilla hereby consent to the entry of judgment against them, personally, jointly and severally, in the amount of $584,736.10, plus interest at the applicable rate from the date this judgment is filed with the Clerk of Courts, and costs as authorized by law.

That difference is immaterial because the January 2012 is not an issue in this case.

{¶6} For its part, Motorcars filed a motion to compel FMI to file a satisfaction of judgment on grounds that the January 6, 2014 payment constituted full performance under the settlement agreement.

{¶7} The court denied issuing a consent judgment. Framing the issue as "whether the settlement agreement either explicitly or tacitly permits payment to be considered to be timely made when it is received after the 5:00 p.m deadline, where the delay results from a failure of a third-party to comply with its instructions," the court rejected FMI's "absolutist" position on the question. The court found that:

> [E]vidence of defendant's reasonable efforts to ensure timely payment of the full amount, coupled with a full and fully-documented explanation of the failure of the third-party bank to meet its commitment and defendant's own successful efforts to rectify the situation within hours of being able to do so, constitute reasonable compliance with the obligation to make timely payment of the final $350,000.

{¶8} As a result of finding that no breach of the settlement agreement occurred, the court not only denied FMI's request to journalize the consent judgment, but also granted Motorcars' motion to compel FMI to file a satisfaction of judgment. Both the refusal to grant the consent judgment and the order compelling a satisfaction of judgment are raised as error.

II

{¶9} "Contracts are the mutual exchange of promises, with each party holding an expectation of certain obligations and benefits." *Frenchtown Square Partnership v. Lemston, Inc.*, 99 Ohio St.3d 254, 2003-Ohio-3648, 791 N.E.2d 417, ¶ 12. When the provisions of a contract are "clear and unambiguous, courts cannot enlarge the contract by implication so as to embrace an object distinct from that originally contemplated by the parties." *Rhoades v. Equitable Life Assur. Soc. of the U.S.*, 54 Ohio St.2d 45, 47, 374 N.E.2d 643 (1978). The court

must enforce clear contract terms as written. *KeyBank Natl. Assn. v. Columbus Campus, L.L.C.*, 2013-Ohio-1243, 988 N.E.2d 32, ¶ 27 (10th Dist.).

{¶10} The settlement agreement could not have been clearer: it required Motorcars to make the third and final installment payment no later than 5:00 p.m. on January 4, 2014, or else Motorcars would consent to a judgment in the amount of $584,736.10 plus interest. There is no question that Motorcars did not meet this deadline. Motorcars' breach was manifest.

{¶11} The court concluded that despite missing the deadline, Motorcars reasonably complied with its obligations under the settlement agreement. This conclusion is wrong for several reasons. First, the court failed to apply the clear and unambiguous language of the settlement agreement. The settlement agreement did not require Motorcars to make its best efforts at compliance — the terms of the settlement agreement were absolute and required Motorcars to make the final payment no later than 5:00 p.m. on January 4, 2014. That a third party retained to make the payment was negligent in doing so is immaterial to the question of whether a breach occurred. The court improperly framed the issue before it in a way that enabled it to bypass the express terms of the settlement agreement so that it could consider fault by a third party as excusing performance.

{¶12} Second, the court applied an equitable solution to a matter that it should have considered only as a matter of law. The construction of a written contract is a matter of law. *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9. In the opening sentence of its judgment, the court stated: "This is, one hopes, the final chapter in protracted litigation that already has long outlasted its anticipated shelf-life." While the court's motivation for seeking to terminate this dispute may have been noble, it should not have applied equity

principles to this contract matter. The court was bound by the express terms of the settlement agreement, no matter how "absolutist" those terms may be.

{¶13} Third, to the extent the court strove to find an equitable resolution of this case, the equities were more so with FMI. As the court made clear, the negotiation leading to the settlement agreement was the product of Motorcars' "obstructionism" in avoiding paying the arbitration award. Motorcars could be said to have benefitted from this obstructionism because the settlement agreement gave Motorcars a discount off the arbitration award and further gave it three years in which to pay the award. To avoid a repeat of Motorcars' avoiding payment on the arbitration award, the parties agreed, at arm's-length, that any delay would come with substantial consequences for Motorcars. That Motorcars failed to perform in a timely manner, even though a third party may have been negligent in delivering payment, ignores the reality that Motorcars did not timely perform its obligation to make the 2014 payment. And it is worth noting that to the extent Motorcars found itself against a payment deadline, it put itself in that position. Knowing that its agent would be unavailable as the deadline for payment approached, it could have made the payment earlier (the settlement agreement required payment "no later than" January 4, 2012) and complied with the express terms of the agreement.

{¶14} To justify its reluctance to take an "absolutist" position on the terms of the settlement agreement, the court cited *Nippon Life Ins. Co. of Am. v. One Source Mgt., Ltd.*, 6th Dist. Lucas No. L-10-1247, 2011-Ohio-2175, for the proposition that Motorcars "substantially" performed its obligations under the settlement agreement because any breach by Motorcars "was not material" and any loss "was not substantial." The better authority is *Master Builders, Inc. v. Hardcore Composites*, 8th Dist. Cuyahoga No. 87154, 2006-Ohio-3729, in which we ordered the trial court to uphold the express terms of a settlement agreement when non-payment by one party

voided the terms of the settlement agreement and reverted the parties to the status quo ante existing before the settlement agreement. By relying on *Nippon* to the exclusion of *Master Builders*, the court substituted its own sense of what it considered to be a "de minimis" breach for what the express terms of the settlement agreement stated.

{¶15} Although the contract did not contain a specific time-is-of-the-essence clause, it was certainly the case that Motorcars' performance by the stated deadline was a material aspect of the settlement agreement. In that regard, time was of the essence.

{¶16} We recognize the law in Ohio is to generally find that time of performance is not of the essence to a contract, *Brown v. Brown*, 90 Ohio App.3d 781, 784, 630 N.E.2d 763 (11th Dist.1993), unless expressed, *Mays v. Hartman*, 81 Ohio App. 408, 412, 77 N.E.2d 93 (1st Dist.1947), or implied from the nature of the contract or circumstances under which it was negotiated. *Green, Inc. v. Smith*, 40 Ohio App.2d 30, 37-38, 317 N.E.2d 227 (4th Dist.1974). And, some courts have found that time is of the essence whenever a definite date is fixed for compliance. *See, e.g., Lake Ridge Academy v. Carney*, 9th Dist. Lorain No. 91CA005063, 1991 Ohio App. LEXIS 4993, * 10-11 (Oct. 16, 1991); *Calabrese v. Vukelic*, 7th Dist. Jefferson No. 94-J-37, 1995 Ohio App. LEXIS 5565, * 3 (Dec. 14, 1995), citing *Domigan v. Domigan,* 46 Ohio App. 542, 546, 189 N.E. 860 (5th Dist.1933).

{¶17} In the case before us, we have no difficulty finding that the circumstances under which the settlement agreement was negotiated make clear that the date and time deadline for Motorcars' performance was essential to the agreement. As previously stated, the court noted that Motorcars' history of obstructionist conduct in satisfying the arbitration award lasted for a period of years. That history provides the background for why the payment deadlines were material under the settlement agreement. Apart from specifying both a date and exact time for

completion of performance, the parties provided consideration in the form of financial incentives: if performance was timely, FMI agreed to forgo the additional amount of money (and accrued interest on that amount) that it was awarded in arbitration;[2] if performance was untimely, Motorcars would pay the full amount of the arbitration award (plus interest) by confession of judgment. The deadline for payment was thus one in which time was of the essence. *Marion v. Hoffman*, 3d Dist. Marion No. 9-10-23, 2010-Ohio-4821, ¶ 22; *Newman v. Hurni*, 6th Dist. Williams No. 92WM000022, 1993 Ohio App. LEXIS 6409 (Dec. 30, 1993).

{¶18} As the Supreme Court explained in *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 613 N.E.2d 183 (1993), "'[w]hen it is said that time is of the essence, the proper meaning of the phrase is that the performance by one party at the time specified in the contract or within the period specified in the contract is essential *in order to enable him to require performance from the other party*.'" (Emphasis sic.) *Id.* at 378 (quoting 6 Williston, *Contracts*, Section 846, at 181 (3d Ed. 1962). The settlement agreement makes clear that absent timely payment, Motorcars could neither insist on FMI accepting less money in settlement than that stated in the arbitration award, nor require FMI to file a satisfaction of judgment.

{¶19} While it is true that FMI was not obligated to file the confession of judgment upon breach, it was certainly its right to do so under the settlement agreement. That another, had it been in FMI's position, may have accepted the late payment and moved on, is not the standard applied in contract law. To hold otherwise would allow equity principles to supersede the

---

[2] The $584,736.10 consent judgment is reflective of the amount FMI agreed to forgo under the terms of the settlement agreement. In this regard, the amount cannot be deemed a penalty for Motorcars' failure to perform by the deadline. *See Lake Ridge Academy* at 188, quoting 5 Williston, *Contracts*, Section 776, at 668 (3d Ed.1961) (a penalty subjects a breaching party to liability "disproportionate to the damage which could have been anticipated from the breach of the contract * * *.")

agreement, and the Ohio Supreme Court long ago rejected such an outcome. *See, e.g., Scott v. Fields*, 7 Ohio 90 (1836) (stating that the right to "frame their contracts as they please" means that parties may make time of the essence and that a court of equity cannot "relieve" them of their obligation).

{¶20} We sustain the first assignment of error and remand with instructions for the court to journalize the consent judgment. The disposition of the first assignment of error necessarily compels us to sustain the second assignment of error relating to the order compelling FMI to file a satisfaction of judgment. The satisfaction of judgment is vacated.

{¶21} This cause is reversed and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellees its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MELODY J. STEWART, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
EILEEN T. GALLAGHER, J., CONCUR