[Cite as *Brannon v. Persons*, 2018-Ohio-114.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| DWIGHT D. BRANNON, et al. | : | |
| | : | |
| *Plaintiffs-Appellees* | : | Appellate Case No. 27444 |
| | : | |
| v. | : | Trial Court Case Nos. 2015-CV-1473 |
| | : | and 2015-CV-3889 |
| DONNA K. PERSONS, et al. | : | |
| | : | (Civil Appeal from |
| *Defendants-Appellants* | : | Common Pleas Court) |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 12th day of January, 2018.

. . . . . . . . . .

DWIGHT D. BRANNON, Atty. Reg. No. 0021657, MATTHEW C. SCHULTZ, Atty. Reg. No. 0080142, 130 West Second Street, Suite 900, Dayton, Ohio 45402
    Attorneys for Plaintiffs-Appellees

DONNA K. PERSONS, 2939 Tubman Avenue, Dayton, Ohio 45417
    Defendant-Appellant-Pro Se

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Defendant-Appellant, Donna Persons, appeals pro se from a summary judgment rendered on behalf of Plaintiffs-Appellees, Dwight Brannon and Matthew Schultz (collectively, "Appellees"). Persons contends that the trial court erred in finding that she breached a contingent fee contract with Appellees, and in awarding Appellees an amount equal to their contingency fee.

{¶ 2} We conclude that the trial court did not err in rendering summary judgment in favor of Appellees on their claim for attorney fees, as Appellant failed to submit any evidence that created a genuine issue of material fact regarding the reasonableness of the fees. Further, assuming for the sake of argument that the action was more properly based on quantum meruit than breach of contract, no prejudice occurred. Appellees also asked the court for equitable relief, and Appellant failed to provide the court with any evidence to challenge the fees that were requested. Appellant was entitled under the law to discharge her attorneys, but she was not entitled to breach the settlement agreement in an attempt to recover more money than the sum to which she had agreed during mediation. Finally, Appellant failed to submit any evidence indicating that Appellees committed legal malpractice. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 3} This action involves two trial court cases that were consolidated. Appellees are attorneys who handled a medical malpractice action for Persons. In March 2015, Appellees filed a complaint against Persons, alleging that she had breached a

contingency fee contract by refusing to sign a release, by attempting to renegotiate a settlement, and by discharging Appellees as counsel after they had completed their representation. Appellees also included the following defendants in the lawsuit – Leslie Cowden, fiduciary of the estate of John Cowden, D.P.M., Central Foot and Ankle Center, and Foot and Ankle Specialists (collectively, "Cowden") – and asked for an injunction ordering these parties to place the settlement funds in escrow. In addition, Appellees requested a declaratory judgment that they were entitled to enforce the settlement agreement as third-party beneficiaries. Finally, Appellees asserted a bad faith claim against Persons, contending that she had acted in bad faith.

{¶ 4} According to the complaint, Persons had signed a contingency fee agreement with Appellees on December 29, 2010. Pursuant to the agreement, Appellees filed a medical malpractice action on Persons' behalf in February 2012. The case was filed against Cowden, and was docketed as Montgomery County Common Pleas Court Case No. 2012-CV-1126.

{¶ 5} A copy of the fee agreement was attached to the complaint as Ex. 1. The complaint alleged that Cowden and Persons had reached agreement during a mediation in September 2014, and that Persons had signed the settlement agreement. A copy of the settlement agreement, with the amount redacted, was attached as Ex. 2. According to Appellees, Persons failed to perform as required by the settlement agreement, and subsequently discharged Appellees as counsel.

{¶ 6} In April 2015, Cowden filed an answer and cross-claim against Persons. In the cross-claim, Cowden admitted that a settlement had been reached, and asked the court to order Persons to perform under the settlement contract. Persons filed a pro se

answer in April 2015, asking the court to strike the complaint on various grounds. Persons also asked for "relief from judgment" pursuant to Civ.R. 60(B), although no judgment was pending against her.

{¶ 7} On April 30, 2015, Appellees filed a motion for partial summary judgment on their claims for breach of contract and injunctive relief. The motion was supported by the affidavit of Schultz, who identified the contingency fee contract and the written settlement agreement that Persons had signed on September 11, 2014. Schultz also outlined what had occurred concerning settlement of the medical malpractice case.

{¶ 8} The contingency fee agreement provided that Appellees would receive a percentage of the gross recovery before suit costs, other appropriate expenses, setoffs, and subrogation. The fee percentage was based on the state at which recovery was received. For example, prior to suit being filed, Appellees' fee would be 40% of the gross recovery; after suit was filed, the percentage would be 45%. Schultz Affidavit, Ex. 1, p. 1. Persons also agreed to pay costs, including Appellees' personal and travel expenses, as well as expenses like expert fees.

{¶ 9} A mediation had occurred in the medical malpractice case on September 11, 2014, and resulted in an agreement to settle the case. The settlement agreement was dated the same day, and was signed by Persons, who agreed to settle her pending case against Cowden for a specific amount (redacted) within thirty days. Persons also agreed to satisfy any liens related to her claims, and to pay one-half the mediation costs.

{¶ 10} On April 30, 2015, Cowden filed a motion for judgment on the pleadings in connection with the cross-claim against Persons. This was based on the fact that Persons' response to the cross-claim was unintelligible, and the fact that Persons did not

dispute having signed the settlement agreement.

{¶ 11} Persons responded to Appellees' summary judgment motion on May 20, 2015, but did not attach any affidavits. She did file some type of transcript of conversations with her attorneys that allegedly took place in October 2014, after the settlement agreement was signed.

{¶ 12} Further responses from both Persons and Appellees regarding the summary judgment motion were filed in June 2015. In addition, Persons filed an affidavit on June 16, 2015, which basically stated that she was not satisfied with the amount of the settlement to which she had agreed.

{¶ 13} On June 18, 2015, the trial judge asked to be disqualified based on his professional acquaintance with Appellees. The Supreme Court of Ohio then assigned a visiting judge to the case in September 2015.

{¶ 14} In July 2015, Persons filed a separate action against Appellees, alleging breach of contract, legal malpractice, breach of fiduciary duty, fraudulent misrepresentation, and fraud. This case was docketed as Montgomery County Common Pleas Court Case No. 2015-CV-03889, and was assigned to the same judge who was hearing the fee dispute case. In April 2016, Appellees filed a motion for partial summary judgment on these claims, which Appellees contended were claims for legal malpractice. The summary judgment motion was supported by the affidavits of several attorneys, who stated that Appellees had complied with pertinent standards of care.

{¶ 15} In the meantime, on October 29, 2015, Appellees renewed their motion for partial summary judgment in the fee dispute case, and attached the affidavits of Matthew Schultz and Arthur Phelps (counsel for Cowden). Among other things, the affidavits and

documents indicated that Persons had signed a full and final release of her claims against Cowden. According to Phelps, Persons had signed the release on October 2, 2015.

{¶ 16} In February 2016, Cowden also filed a motion for summary judgment, arguing that no genuine issues of material fact existed concerning whether an enforceable settlement existed. Cowden further asked the court to allow Cowden to deposit the settlement proceeds in escrow and to dismiss Cowden from the action. Cowden's motion was supported by the affidavit of Arthur Phelps, who attached Persons' October 2, 2015 release of all claims against Cowden.

{¶ 17} The trial court granted Cowden's summary judgment motion in April 2016, and ordered Cowden to deposit the settlement proceeds in an escrow account with the Montgomery County Clerk of Courts. In addition, the court dismissed Cowden from the action. Subsequently, on May 2, 2016, the trial court concluded that summary judgment should be rendered in Appellees' favor on their fee claim as well as on Persons' malpractice claim. The court then set a hearing for July 26, 2016, to consider disposition of the funds deposited with the clerk.

{¶ 18} On June 21, 2016, Persons filed a notice of appeal from the May 2, 2016 summary judgment decision. However, we dismissed the appeal for lack of a final appealable order on November 1, 2016. *See Brannon v. Persons*, 2d Dist. Montgomery No. 27151 (Nov. 1, 2016).

{¶ 19} While the case was on appeal, the trial court filed a judgment entry awarding Appellees the sum of $87,750, which was 45% of the total settlement amount, consistent with the fee agreement between Appellees and Persons. The court also awarded judgment to Appellees on all claims asserted by Persons in Case No. 2015-CV-3889. In

addition, the court awarded Appellees $2,588.61 in costs and $4,399.52 in prejudgment interest from November 24, 2014, up to the time of the hearing held on July 26, 2016.

{¶ 20} At that time, the court overruled Appellees' motion for attorney fees incurred in both pending cases, because their claim for bad faith remained pending. The judgment, which was filed on August 25, 2016, was accompanied by a Civ.R. 54(B) certification. Persons filed a notice of appeal from this judgment on September 14, 2016. We dismissed the appeal, however, finding that the trial court lacked jurisdiction to enter an order while the appeal was pending. *See Brannon v. Persons*, 2d Dist. Montgomery No. 27266 (Dec. 20, 2016).

{¶ 21} Subsequently, on January 17, 2017, the trial court entered another judgment, which awarded Appellees the same amounts for attorney fees, costs, and prejudgment interest. The court, thus, ordered a total of $95,044.13 to be distributed to Appellees, and $76,539.20 to be distributed to Persons. However, the court also ordered that $23,416.67 of Person's award would be retained in escrow, pending the court's resolution of Appellees' claims for bad faith and attorney fees.

{¶ 22} The January 2017 decision incorporated the May 2, 2016 summary judgment order, and the court also included a Civ.R. 54(B) certification with the judgment. Persons then filed a notice of appeal on February 7, 2017, and her appeal was docketed as Appeal No. 27444 (the current case).

{¶ 23} On March 15, 2017, Appellees filed a motion to dismiss the current appeal, based on the fact that the Clerk of Courts paid Appellees the judgment of $95,044.13 on January 19, 2017. Appellees contended that the appeal, therefore, was moot.

{¶ 24} We filed a decision and entry on July 5, 2017, overruling the motion to

dismiss. We noted that while we were overruling the motion at that time, Appellees could make arguments about mootness in their brief, and the issue would be decided when the case was submitted to a merit panel. *See Brannon v. Persons*, 2d Dist. Montgomery No. 27444 (July 5, 2017). Both sides have filed their briefs, and the matter is ready for disposition. Appellees have reasserted their claim of mootness in their brief, and we will consider that matter first, as it could dispose of the appeal.

## II. Whether the Appeal is Moot

{¶ 25} According to Appellees, the appeal is moot because Persons failed to obtain a stay of execution, and the judgment against her was satisfied by the payment to Appellees on January 19, 2017. Persons did not file a reply brief, and has not responded to this argument.

{¶ 26} Requirements for a stay of execution are contained in R.C. 2505.09, which provides that "an appeal does not operate as a stay of execution until a stay of execution has been obtained pursuant to the Rules of Appellate Procedure or in another applicable manner, and a supersedeas bond is executed by the appellant to the appellee, with sufficient sureties and in a sum that is not less than, if applicable, the cumulative total for all claims covered by the final order, judgment, or decree and interest involved * * *."

{¶ 27} App.R. 7(A) provides that, ordinarily, applications for a stay of execution must first be made in the trial court. This rule further states that "[a] motion for such relief * * * may be made to the court of appeals or to a judge thereof, but, except in cases of injunction pending appeal, the motion shall show that application to the trial court for the relief sought is not practicable, or that the trial court has, by journal entry, denied an

application or failed to afford the relief which the applicant requested." Persons did not apparently take any of these actions to stay the trial court's judgment; at a minimum, our docket does not reveal an application for a stay.

{¶ 28} In *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 551 N.E.2d 1249 (1990), the Supreme Court of Ohio held that:

> It is a well-established principle of law that a satisfaction of judgment renders an appeal from that judgment moot. " 'Where the court rendering judgment has jurisdiction of the subject-matter of the action and of the parties, and fraud has not intervened, and the judgment is voluntarily paid and satisfied, such payment puts an end to the controversy, and takes away from the defendant the right to appeal or prosecute error or even to move for vacation of judgment.' "

*Id.* at 245, quoting *Rauch v. Noble*, 169 Ohio St. 314, 316, 159 N.E.2d 451 (1959). (Other citation omitted.)

{¶ 29} In *Blodgett*, the appellant argued that her appeal should not be terminated because she had signed a satisfaction of the lower court judgment and had taken its benefits due to economic duress. *Id.* The Supreme Court of Ohio was not persuaded, declining "to accept the proposition that if an appellant executes a satisfaction of judgment merely because she cannot afford to wait for the outcome of an appeal, that satisfaction of judgment may be subsequently avoided." *Id.* at 246.

{¶ 30} We subsequently distinguished *Blodgett* because our case (a foreclosure case where the property had been sold) did not "involve a contract or agreement that a judgment has been satisfied or settled." *Chase Manhattan Mtg. Corp. v. Locker*, 2d Dist.

Montgomery No. 19904, 2003-Ohio-6665, ¶ 41. *See also Janis v. Janis*, 2d Dist. Montgomery No. 23898, 2011-Ohio-3731, ¶ 28 (noting that "*Blodgett* does not stand for the proposition that any payment toward the satisfaction of a judgment while an appeal is pending renders moot the appeal or any specific issue therein. [Appellee] has cited no authority for her suggestion that certain aspects of an appeal can be rendered moot by the actions of the parties without an agreement to that effect and without payment in full.")

{¶ 31} In *KeyBank Natl. Assn. v. Mazer Corp.*, 188 Ohio App.3d 278, 2010-Ohio-1508, 935 N.E.2d 428 (2d Dist.), we also refused to find an appeal moot because ownership of or interest in property being disputed (several hundred thousand pounds of paper) had been sold and the proceeds had been placed in escrow pending appeal. *Id.* at ¶ 53. Notably, we said that "[t]he statements of the parties indicate that these matters occurred after the judgment that is on appeal, and they are not properly before us." *Id.*

{¶ 32} We further observed in *KeyBank* that "[t]he right to appeal is not conditioned upon obtaining a stay of the judgment from which the appeal is taken. A party who cannot afford the requisite supersedeas bond, or who is otherwise unable to obtain a stay of the offending judgment – perhaps * * * because the party loses the race between the appellant's attempt to obtain a stay and the appellee's attempt to reduce its judgment to money, does not thereby lose the right to appeal. A *voluntary* satisfaction of a judgment waives any appeal from that judgment." (Emphasis sic.; citations omitted.) *Id.* at ¶ 54.

{¶ 33} In the case before us, the payment in question apparently occurred after judgment was rendered, and is not properly before us. Furthermore, even if this were otherwise, there is no indication that Persons signed any type of agreement that the judgment had been satisfied. The money had also been placed in escrow. Based on

the above authority, we conclude that the appeal is not moot.

### III.   Right to Terminate Fee Agreement

{¶ 34} Because the First and Second Assignments of Error are interrelated, we will consider them together.   Persons' First Assignment of Error states that:

> The Trail [sic] Court Erred in Finding that Appellant Donna Persons Breach [sic] the Contingency Fee Contract Agreement and Finding that Appellant Persons Was Held Binding to the Contingency Fee Contract Based on Hear Say [sic] With Regard to Appellant Had Received Advice that the Settlement Was a "Bad Deal" from "Insurance Expert" Robert McComb, as Lower Court Ruled on May 2, 2016.

{¶ 35} The Second Assignment of Error states that:

> The Trail [sic] Court Erred in Granting Summary Judgment in the Full 45% Amount of the Contingency Fee Agreement to Dwight D. Brannon & Associates for Breach of Contract against Appellant Donna Persons under the Contingency Fee Agree [sic] in Case's [sic] 2015 CV 01473.

{¶ 36} As was noted, Persons' pro se brief is basically unintelligible.   Under these assignments of error, Persons appears to contend that the trial court based its grant of summary judgment on an improper assumption that Persons received bad advice from a third party, and that she had a right to terminate the fee contract when Appellees refused to pursue all damages to which she was entitled, including future surgeries.

{¶ 37} "A trial court may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving

party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist. 1999), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 375 N.E.2d 46 (1978). "We review decisions granting summary judgment de novo, which means that we apply the same standards as the trial court." (Citations omitted.) *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.).

{¶ 38} In its order on the pending motions for summary judgment, the trial court noted the factual background of the action. During its discussion, the court commented on items that had been attached to Appellees' motion for summary judgment on the fee issue, and on items attached to Persons' reply to the motion. The court stated that of the various materials Persons had attached, only two had been properly submitted under Civ.R. 56(E). These were requests for admissions and an affidavit of Mr. McCombs. The court concluded that McCombs' affidavit was inadmissible as hearsay, and was additionally irrelevant to any issues in the contract case.

{¶ 39} Concerning the fee claim, the court concluded that Persons signed a final settlement and release of claims against Cowden on October 2, 2015, and that this seemingly mooted her claims regarding the settlement agreement. The court then stated that even if any fraud or misrepresentation claims survived, there was no evidence of such. The court further commented that Mr. McCombs convinced Persons after the mediation that she had made a "bad deal" and should get out of it. After making this observation, the court stated that there were no genuine issues of material fact, and that

the settlement agreement and contingent fee agreement were binding on Persons.

{¶ 40} The Supreme Court of Ohio has held that "[w]hen an attorney is discharged by a client with or without just cause, and whether the contract between the attorney and client is express or implied, the attorney is entitled to recover the reasonable value of services rendered the client prior to discharge on the basis of quantum meruit." *Fox & Assoc. Co., L.P.A. v. Purdon*, 44 Ohio St.3d 69, 541 N.E.2d 448 (1989), syllabus. The court further held that the maximum reach of a law firm's right to fees "is the reasonable value of the legal services actually rendered to the date of discharge." *Id.* at 72.

{¶ 41} "One of the central tenets of the *Fox* approach is that a client has an absolute right to discharge an attorney or law firm at any time, with or without cause, subject to the obligation to compensate the attorney or firm for services rendered prior to the discharge. * * * Once discharged, the attorney must withdraw from the case, and can no longer recover on the contingent-fee-representation agreement. The discharged attorney may then pursue a recovery on the basis of quantum meruit for the reasonable value of services rendered up to the time of discharge*.*" (Citations omitted.) *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 68 Ohio St.3d 570, 574, 629 N.E.2d 431 (1994).

{¶ 42} Furthermore, "when an attorney representing a client pursuant to a contingent-fee agreement is discharged, the attorney's cause of action for a fee recovery on the basis of *quantum meruit* arises upon the successful occurrence of the contingency." *Reid* at 575. In addition, "the *quantum meruit* recovery of a discharged attorney should be limited to the amount provided for in the disavowed contingent fee agreement." (Citation omitted.). *Id.* at 576. The totality of circumstances is to be

considered in determining the fee, including the number of hours an attorney worked before discharge, "the skill demanded, the results obtained, and the attorney-client relationship itself."   (Citation omitted.)   *Id.*   For aid in analysis, the court also suggested former DR 2-106(B) of the Code of Professional Responsibility, which provided guidelines concerning reasonableness of attorney fees.   *Id.* at 576 and fn.3.

{¶ 43} The factors listed in this section of the Code included:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent."

*Reid*, 68 Ohio St.3d at 576, fn.3, 629 N.E.2d 431, quoting DR 2-106(B).[1]

---

[1] Guidelines pertaining to fees and expenses are now found in Prof.Cond.R. 1.5, and

**{¶ 44}** The trial court did not consider the above factors specifically, but concluded that Persons failed to submit any evidence to support her claims. The issue, therefore, is whether the court's failure to specifically discuss the factors was prejudicial error. We conclude that the error, if any, was not prejudicial. *See* Civ.R. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). *See also Fada v. Information Sys. & Networks Corp.,* 98 Ohio App.3d 785, 792, 649 N.E.2d 904 (2d Dist.1994) ("errors 'will not be deemed prejudicial where their avoidance would not have changed the result of the proceedings.' ") (Citations omitted.) The critical point here is that Persons submitted absolutely no evidence indicating that the requested fees were unreasonable.

**{¶ 45}** In affidavits filed with the trial court, Appellees did not specifically state the number of hours they had worked prior to discharge, but they did note that they had filed the case in February 2012, and had conducted discovery and readied the case for trial. The affidavits indicate that a mediation occurred in September 2014, eleven days before the case was scheduled to go to trial. At that point, more than two years had elapsed since the case was filed, and nearly four years had elapsed since Persons initially retained Appellees. The affidavits further indicate that Brannon, who had decades of experience in medical malpractice litigation, supervised Schultz's work, and the two spoke about the case regularly, discussing its progress and issues that arose, including difficulties taking the deposition of the defendant doctor, who eventually died in August 2014, during the pendency of the case. Appellees further indicated that they had worked hard preparing

---

the factors are unchanged from those quoted in *Reid.*

the case for trial and had negotiated a very advantageous settlement for Persons. Furthermore, after the mediation hearing, Appellees negotiated with Persons' subrogated insurance carrier and were able to reduce the carrier's claims to approximately 45% of its original lien on the settlement proceeds.

{¶ 46} Appellees obtained a successful occurrence of the contingency, as a settlement agreement was signed by Cowden and Persons at the mediation hearing in September 2014. Appellees also submitted the affidavit of Sam Caras, who had practiced law since 1980, and whose practice consisted, in significant part, of representing plaintiffs in medical malpractice cases. Caras indicated he had reviewed several documents from the medical malpractice case and had found no instance where Appellees deviated from the standard of care in connection with their representation of Persons.

{¶ 47} According to Caras, it was not unreasonable or below the standard of care for Appellees to charge a 45% contingency fee. Caras stated that: "Medical malpractice cases are extremely difficult to pursue successfully, and require specific, specialized skills. Podiatric malpractice cases are especially difficult to pursue, largely due to the difficulty of obtaining an expert witness to testify as to the violation of the standard of care." March 24, 2016 Affidavit of Sam Caras, p. 2. Additionally, Caras stated that:

> Given the total medical bills of approximately $130,000.00, and actual medical bills paid in the amount of approximately $46,000.00, and given the nature of the claim, the difficulty of pursuing a medical malpractice claim in general, and a podiatric medical malpractice claim in particular, the settlement reached at mediation, for $195,000.00, is reasonable. Advising

Ms. Persons to accept such a settlement is not below the standard of care.

The reasonableness of this settlement amount is not dependent on whether Ms. Persons needed a further corrective surgery. Even if Ms. Persons needed further surgery, an allegation that is not at all clear from her deposition taken less than two months before the mediation, it was not below the standard of care of Mr. Brannon and Mr. Schultz to advise Ms. Persons to accept the $195,000 settlement offer.

Caras Affidavit at pp. 2-3.

{¶ 48} Appellees also submitted the affidavit of another attorney, Julius Carter, who made similar observations about the reasonableness of the contingency fee and the difficulty of pursuing medical malpractice cases. *See* April 7, 2016 Affidavit of Julius Carter.

{¶ 49} Persons failed to present any admissible evidence challenging the above statements, nor did she present any evidence indicating that Appellees' requested fees were unreasonable under the circumstances. What the evidence indicated is that Persons agreed to settle her case for $195,000 during mediation, and signed a written agreement to that effect. She also filed an affidavit in the current action, stating that she had informed Appellees before the mediation that she would need two more corrective surgeries on her foot. *See* April 19, 2016 Second Affidavit of Donna Persons, p. 2. In addition, Persons stated in the affidavit that she was told during the mediation proceedings that "all damages" were included in the $195,000 figure, and agreed with the settlement at that point. *Id*. Both the contingency fee agreement and the settlement agreement informed Persons that she would be required to pay any subrogation

expenses or liens related to her claims.

{¶ 50} After signing the settlement agreement, Persons apparently became dissatisfied with the amount she was going to receive. A few days after the mediation, Persons appeared at Appellees' office with a self-described "insurance expert," Robert McComb. McComb was not an attorney. Persons then appeared again at Appellees' office in October 2014, this time with McComb and her sons. At the latter meeting, Persons expressed unhappiness with the subrogation amount (which had been reduced considerably), and asserted (incorrectly) that the settlement amount did not cover future surgeries that she would need. Persons, therefore, wanted to re-negotiate both the settlement amount and the fee agreement.

{¶ 51} Appellees refused, and submitted the fee dispute to the Dayton Bar Association's Attorney Fee Dispute Arbitration Program on October 21, 2014. However, Persons refused to participate in that process. Consequently, Appellees filed a motion to reactivate Person's medical malpractice case, and Cowden filed a motion in that action on November 17, 2014, asking the court to enforce the settlement. Subsequently, on November 20, 2014, Persons informed Appellees that she no longer wished them to represent her. Appellees then filed a motion to withdraw as counsel on December 1, 2014, and their motion to withdraw was granted on December 26, 2014.

{¶ 52} Appellees filed a motion to intervene in the pending medical malpractice action, but before the court could rule on their motion to intervene or on Cowden's motion to enforce the settlement, Persons filed a Civ.R. 41(A) dismissal of her medical malpractice action. Appellees then filed the current action in March 2015, asking for enforcement of the fee agreement, for equitable relief in the form of an injunction, and for

a declaratory judgment.

{¶ 53} As was noted, at no point has Persons submitted any Civ.R. 56 evidence that challenges the reasonableness of the fee awarded. "While a nonmoving party has no burden of proof in opposing a motion for summary judgment, when presented with a motion for summary judgment properly supported showing no issue of fact exists and that the moving party is entitled to judgment as a matter of law, the nonmoving party does have a burden to supply evidentiary materials to support his position that a genuine issue of fact exists." *Beard v. Mayfield*, 73 Ohio App.3d 173, 176-77, 596 N.E.2d 1056 (10th Dist.1991), citing *Mathis v. Cleveland Pub. Library*, 9 Ohio St.3d 199, 459 N.E.2d 877 (1984). *Accord Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); *Deutsche Bank Natl. Tr. Co. v. Holden*, 147 Ohio St.3d 85, 2016-Ohio-4603, 60 N.E.3d 1243, ¶ 34.

{¶ 54} Accordingly, because Persons failed to meet her burden under Civ.R. 56(E), any error in the trial court's analysis was harmless. Appellees presented evidence that the contingency in the fee contract successfully occurred. Specifically, Appellees obtained a settlement, and Persons signed a release of her claims against Cowden on October 2, 2015, in exchange for the amount of the settlement that Appellees had negotiated. The fee awarded was also not more than the amount established in the contingency fee contract. *Reid*, 68 Ohio St.3d at 576, 629 N.E.2d 431. Furthermore, the undisputed evidence that Appellees submitted revealed that the fee was reasonable under the totality of the circumstances.

{¶ 55} "The factors a court considers to determine the reasonableness of a discharged attorney's fees under a quantum meruit claim, in addition to the ultimate

amount of quantum meruit recovery by the discharged attorney, are matters to be resolved by the trial court within the exercise of its discretion." (Citations omitted.) *Doellman v. MidFirst Credit Union, Inc.*, 12th Dist. Warren No. CA2006-06-074, 2007-Ohio-5902, ¶ 17. An abuse of discretion "means we will affirm unless we find the trial court's attitude 'unreasonable, arbitrary or unconscionable.' " *Schafer v. RMS Realty*, 138 Ohio App.3d 244, 300, 741 N.E.2d 155 (2d Dist.2000), quoting *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "Decisions are unreasonable if they are not supported by a sound reasoning process." *Id.* We see no evidence that the trial court's decision was unsupported by sound reasoning.

{¶ 56} As a final matter, we note that the trial court held a hearing on July 26, 2016, regarding the disposition of funds held by the Clerk of Courts. No transcript of the hearing was filed, and we have no idea what occurred at the hearing. "Without a transcript, we must presume the validity of the trial court's proceedings, and [Appellant's] evidentiary arguments necessarily fail." (Citations omitted.) *Jenkins v. Pullins*, 2d Dist. Clark No. 2007-CA-14, 2008-Ohio-6727, ¶ 18.

{¶ 57} Based on the preceding discussion, we find no error in the grant of summary judgment or abuse of discretion in the trial court's award of fees to Appellees. Persons' First and Second Assignments of Error, therefore, are overruled.


IV. Breach of Contract

{¶ 58} Persons' Third Assignment of Error states that:

The Trial Court Erred by Granting Summary Judgment to Dwight D.

Brannon & Associates/Matthew Schultz in Case Number 2015 CV 01473, for Breach of Contract Under the Contingency Fee Agreement Against Appellant Donna Persons.

**{¶ 59}** Under this assignment of error, Persons contends that Appellees had no cause of action for breach of contract under the fee agreement; instead, their only recovery was under a theory of quantum meruit, which they failed to plead. Also mentioned in the discussion of this assignment of error is that Appellees were terminated for "just cause" because they were negligent and breached the fee agreement.

**{¶ 60}** Persons' response to the complaint was a rambling 29-page document that was docketed as an "Answer." It was not titled as an answer; instead, Persons asked the court to strike and dismiss the complaint on various grounds, including lack of standing and lack of personal and subject matter jurisdiction. Persons did raise, at page 26, the fact that Appellees' remedy was under "quantum merits" [sic] and that the court should dismiss the complaint for breach of contract and other remedies. Appellees filed a response on April 30, 2015, asking the court to strike all or part of Persons' response to the complaint.

**{¶ 61}** On September 30, 2015, Persons filed another motion to dismiss, arguing that the contract became "void" on her termination of the contract. Appellees responded to this motion on October 14, 2015, noting that both of Persons' motions to dismiss referenced matters not in the complaint. In addition, Appellees noted that the Ohio cases that Persons cited, which dealt with fee disputes, simply discussed the type of relief afforded, not whether a claim had been stated. On May 2, 2016, the trial court granted the motions for summary judgment that Appellees had filed with respect to the fees and

malpractice claims.   Two days later, the court overruled Persons' motion to dismiss.

{¶ 62} As was noted, Persons filed a notice of appeal from these summary judgment decisions, but we dismissed her appeal for lack of a final appealable order. See *Brannon v. Persons*, 2d Dist. Montgomery No. 27151 (Nov. 1, 2016).   After the case was remanded to the trial court, Persons never actually filed an answer to the complaint. She had also not previously filed an answer after the trial court denied her motion to dismiss.   Following remand, the trial court issued another order granting summary judgment in Appellees' favor on January 17, 2017, and included a Civ.R. 54(B) certification.

{¶ 63} Civ.R. 12(A)(2) requires answers to be served within fourteen days after the court denies a motion to dismiss.   Failure to deny an averment in a pleading has been held to be an admission of the averment.   *See, e.g., Am. Savs. Bank v. Wrage*, 4th Dist. Scioto No. 13CA3566, 2014-Ohio-2168, ¶ 19; U.*S. Bank, N.A. v. Goldsmith*, 10th Dist. Franklin No. 14AP-783, 2015-Ohio-3008, ¶ 9.   In *Goldsmith*, the court commented that "[a]lthough Civ.R. 8(D) does not differentiate between allegations of fact and legal conclusions, judicial admissions, by definition, can only admit the truth of allegations of fact."   (Citations omitted.)   *Id.*   Under this theory, one could assume that Persons, therefore, admitted the truth of the factual allegations in the complaint, but could potentially assert a legal argument.

{¶ 64} Assuming that Persons' "legal" argument is properly before us, we find no reversible error.   We noted earlier that the Supreme Court of Ohio held in *Fox* that "[w]hen an attorney is discharged by a client with or without just cause, and whether the contract between the attorney and client is express or implied, the attorney is entitled to

recover the reasonable value of services rendered the client prior to discharge on the basis of quantum meruit." *Fox*, 44 Ohio St.3d 69, 541 N.E.2d 448, at syllabus.

{¶ 65} In *Fox*, the defendant entered into a written contingency fee agreement with Fox & Associates for the filing of a personal injury claim. *Id.* at 70. The attorney (Michael Ellerbrock), who handled defendant's case at Fox, left the firm before the case was settled. As a result, the defendant discharged the law firm. The afternoon of the discharge, Ellerbrock advised the defendant that the insurance company had increased its offer, and she accepted. *Id.* When Ellerbrock received the settlement money, he retained the agreed-upon one-third fee and costs, and gave defendant the rest of the money. *Id.* At that point, the law firm sued the defendant, seeking the full one-third contingency fee. *Id.* The trial court concluded that defendant had breached the contract by discharging the law firm without just cause, and awarded the firm the approximate amount of the one-third contingency fee. *Id.*

{¶ 66} Before *Fox* was decided, the rule had been that where an express contingency fee contract existed and the client breaches without just cause, " 'the measure of damages in such case is not limited to the reasonable value of the services rendered by the lawyers employed prior to the cancellation of the contract,' but rather damages should be for the full contract price." *Id.* at 71, quoting *Roberts v. Montgomery*, 115 Ohio St. 502, 154 N.E. 740 (1926), paragraph two of the syllabus. In this situation, full payment would be required "even if the attorney has not yet rendered services." *Id.*, citing *Scheinesohn v. Lemonek*, 84 Ohio St. 424, 95 N.E. 913 (1911).

{¶ 67} The court stressed that "[t]his rule is based on the premise that *quantum meruit* should not be used as the *measure for damages* since the client has not been

benefited by some service, and yet, the value of the attorney's anticipated services has been fixed by agreement of the parties." (Emphasis added.) *Fox,* 44 Ohio St.3d at 71, 541 N.E.2d 448. An additional factor was the assumption of courts "that placing value on attorney services is difficult since such services are not easily apportionable to the time or the labor performed or to be performed in the future." (Citation omitted.) *Id.* Ultimately, the Supreme Court of Ohio decided to abandon this reasoning, due to "the contemporary and regulated status of today's attorney-client relationship relative to fees." *Id.* As a result, the court overruled *Scheinesohn* and also overruled *Roberts,* "to the extent that it distinguishes between recovery in cases where express contracts exist (full price must be paid), and recovery on the basis of *quantum meruit* in the absence of an express contract." *Id.* at 72. The court, thus, decided that, in either situation, "the attorney is entitled to recover the reasonable value of services rendered prior to the discharge on the basis of *quantum meruit*." *Id.*

{¶ 68} The court then reversed the case and remanded it to the trial court for a decision on the reasonable value of the services rendered by the law firm. *Id.* The court did not say that the action should be dismissed because it had been brought for breach of contract, rather than under quantum meruit.

{¶ 69} Subsequently, the Supreme Court of Ohio stated that:

One of the central tenets of the *Fox* approach is that a client has an absolute right to discharge an attorney or law firm at any time, with or without cause, subject to the obligation to compensate the attorney or firm for services rendered prior to the discharge. * * * Once discharged, the attorney must withdraw from the case, and can no longer recover on the

contingent-fee-representation agreement. The discharged attorney may then pursue a recovery on the basis of quantum meruit for the reasonable value of services rendered up to the time of discharge.

*Reid*, 68 Ohio St.3d at 574, 629 N.E.2d 431.

**{¶ 70}** The case before us differs from many cases that we have reviewed, in that it was completely resolved through settlement by one set of attorneys who are requesting fees for their work. Many cases involve situations where an initial attorney or law firm performed some work and the case was eventually resolved by another attorney or law firm. *See, e.g., Fox*, 44 Ohio St.3d at 70, 541 N.E.2d 448; *In re J.F.*, 162 Ohio App.3d 716, 2005-Ohio-4258, 834 N.E.2d 876, ¶ 3-5 (9th Dist.). Often, competing contingent fee contracts are involved. *See, e.g., Reid,* 68 Ohio St.3d at 571-572, 629 N.E.2d 431; *J.F.* at ¶ 3-4.

**{¶ 71}** In September 2014, Persons signed a written settlement agreement, stating that she would accept a sum certain for her claims. She discharged her counsel in November 2014, and thereafter, did not retain further counsel. Persons then signed a release of her claims in October 2015, after Appellees had filed their action. Thus, the only real issue before the trial court was what compensation, if any, should be given to Appellees for their work.

**{¶ 72}** In *Randolph v. Howard*, 1st Dist. Hamilton No. C-930274, 1994 WL 176908 (May 11, 1994), the appellant argued that the trial court had erred in awarding an attorney fees based on a contract, when the reasonable value of his services should have been determined based on quantum meruit. *Id.* at *2. The appellate court agreed, but concluded that the "error was harmless because, in light of all the evidence, the award is

consistent with reasonable value and substantial justice has been rendered." (Citation omitted.)

{¶ 73} In the case before us, Persons fails to indicate how she was prejudiced if the action was incorrectly brought on a contract basis rather than in quantum meruit. As was noted, Persons failed to present any admissible evidence challenging the reasonableness of the attorney fees that Appellees claimed or establishing a genuine issue of material fact as to the reasonableness of the fees under the totality of the circumstances.

{¶ 74} We also note the decision in *Harraman v. Howlett*, 5th Dist. Morrow No. 03CA0023, 2004-Ohio-5566, in which the trial court imposed a constructive trust on attorney fees received by a second group of attorneys who had settled a case. When the second set of attorneys appealed, the court of appeals rejected their argument that the trial court erred in imposing a constructive trust on their fees. The court of appeals stressed that both quantum meruit and constructive trusts are equitable remedies, and that a "constructive trust" could be imposed against " ' "one * * * *who in any way against equity and good conscience either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy*. It is raised by equity to satisfy the demands of justice. * * * " ' " (Emphasis sic.) *Harraman* at ¶ 38, quoting *Ferguson v. Owens*, 9 Ohio St.3d 223, 459 N.E.2d 1293 (1984), which in turn quotes 76 American Jurisprudence 2d, Trusts, Section 221 (1975).

{¶ 75} In *Harraman*, the court of appeals commented that when the successful contingency occurred (the settlement), the original attorney's cause of action for a recovery based on quantum meruit arose; thus, the trial court correctly imposed a

constructive trust because the second set of attorneys wrongfully held title to the fees, even though no fraud had occurred.   *Id.* at ¶ 31-43.

**{¶ 76}** Similarly, in the case before us, Appellees included Cowden, the current holder of the settlement proceeds, as a defendant, and asserted a property right in the proceeds that Cowden held.   *See* Plaintiff's Complaint, ¶s 36-41.   Appellees also asked the trial court for an injunction ordering the proceeds to be placed in escrow to protect their right to a portion of the proceeds pending resolution of their claims.   *Id.* at ¶ 41. The trial court did order that the funds be placed in escrow pending a decision on Appellees' claim.   Since this served the same equitable purpose as a claim for quantum meruit, we fail to see how Persons was prejudiced.

**{¶ 77}** In *Fox*, the court stressed that the quantum meruit rule does not "create a threat that the discharged attorney will not be compensated for services rendered before discharge occurs. * * * An attorney who substantially performs under the contract may be entitled to the full price of the contract in the event of discharge 'on the courthouse steps,' or just prior to settlement. * * * Similarly, it would be inequitable to force a client who has received no service from the discharged attorney to pay the full price of the contract.   Any benefit received by the client through subsequently successful litigation or settlement may have been the result of in propria persona representation or representation by new counsel."   *Fox*, 44 Ohio St.3d at 72, 541 N.E.2d 448.

**{¶ 78}** In the case before us, the discharge did not occur prior to settlement; it was *after* settlement, and *after* the parties had entered into a written settlement agreement. Persons also did not obtain new counsel who had a claim to any fees.   Under the circumstances, there is no basis for awarding something other than the full amount of the

requested fees. Again, Persons failed to submit any evidence establishing a genuine issue of material fact concerning the reasonableness of the fees. The fact that she wanted to obtain more money than the amount to which she had agreed does not justify a reduction of attorney fees. It is true that Persons had a right to discharge her attorneys, but that does not mean she was entitled to more money as a result of her choices. Accordingly, we find Persons' argument without merit.

{¶ 79} The final issue is the summary judgment granted to Appellees on Persons' claims for legal malpractice. As was noted, Persons' brief is largely unintelligible, but she does mention in passing that Appellees "breached" the contingency agreement when they failed to pursue all the damages to which she was entitled, including the cost of future surgeries.

{¶ 80} In rejecting Persons' malpractice claim, the trial court noted that Appellees had submitted several affidavits from legal experts indicating they did not fall below the standard of care in representing Persons. The court further observed that Persons failed to submit any evidence, by way of affidavit or otherwise, to indicate that Appellees fell below the pertinent standards of care.

{¶ 81} "An action against one's attorney for damages resulting from the manner in which the attorney represented the client constitutes an action for malpractice within the meaning of R.C. 2305.11, regardless of whether predicated upon contract or tort or whether for indemnification or for direct damages." *Muir v. Hadler Real Estate Mgt. Co.*, 4 Ohio App.3d 89, 89–90, 446 N.E.2d 820 (10th Dist.1982). "Malpractice by any other name still constitutes malpractice." *Id.* at 90. *Accord Pierson v. Rion*, 2d Dist. Montgomery No. 23498, 2010-Ohio-1793, ¶ 13.

{¶ 82} Consequently, despite how Persons may have phrased her complaint against Appellees, her action is for legal malpractice. "To establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." *Vahila v. Hall*, 77 Ohio St.3d 421, 674 N.E.2d 1164 (1997), syllabus. "The failure of a party asserting a legal malpractice claim to establish any one of the three elements entitles the opposing party to summary judgment." (Citation omitted.) *Lundeen v. Graff*, 2015-Ohio-4462, 46 N.E.3d 236, ¶ 12 (10th Dist.)

{¶ 83} In *Vahila*, the court also stated that:

We are aware that the requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case. Naturally, a plaintiff in a legal malpractice action may be required, depending on the situation, to provide some evidence of the merits of the underlying claim. * * * However, we cannot endorse a blanket proposition that requires a plaintiff to prove, in every instance, that he or she would have been successful in the underlying matter.

(Citations omitted.) *Vahila* at 427-428.

{¶ 84} Subsequently, the Supreme Court of Ohio clarified *Vahila*, commenting that "[w]hen a plaintiff premises a legal-malpractice claim on the theory that he would have received a better outcome if his attorney had tried the underlying matter to conclusion rather than settled it, the plaintiff must establish that he would have prevailed in the

underlying matter and that the outcome would have been better than the outcome provided by the settlement." *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3833, 893 N.E.2d 173, syllabus.

**{¶ 85}** After reviewing this matter, we conclude that the trial court's recitation of the evidence and its conclusions about the lack of malpractice were correct. As a preliminary matter, Persons' claim was not precisely that she would have received more money if she had gone to trial; her complaint, in essence, is that her settlement should have included compensation for future surgeries. However, in an affidavit filed in the current action, Persons stated that she had informed her counsel before the mediation that she would need two more corrective surgeries on her foot. *See* April 19, 2016 Second Affidavit of Donna Persons, p. 2. Persons also stated in the affidavit that she was told during the mediation proceedings that "all damages" were included in the $195,000 figure, and agreed with the settlement at that point. *Id.*

**{¶ 86}** The trial court stated that:

Clearly the settlement dealt with all aspects of [Persons'] case and that all damages were included as she alleges she was advised. The Court has no idea what Plaintiff means by "to incorporate the constructive evidence that two more future surgeries would be required." If she means that Mr. Schultz advised her that the settlement includes all future damages, including future surgeries, it does.

May 2, 2016 Orders on Summary Judgment, p. 7.

**{¶ 87}** We agree with the trial court. Furthermore, even if we assumed that Persons' claim fits within the less stringent standard in *Vahila*, the fact is that Persons

failed to present "some" or even *any* evidence of the merits of her underlying claim. *Vahila*, 77 Ohio St.3d at 428, 674 N.E.2d 1164.

**{¶ 88}** Moreover, Persons also failed to present any evidence that Appellees failed to comply with appropriate standards of care in settling her case. "[I]n a legal malpractice case, expert testimony is generally required in order to prove breach of the duty that the attorney owed to the plaintiff, unless the claimed breach of professional duty is 'well within the common understanding of * * * laymen.' " *Lundeen*, 2015-Ohio-4462, 46 N.E.3d 236, at ¶ 17, quoting *McInnis v. Hyatt Legal Clinics*, 10 Ohio St.3d 112, 461 N.E.2d 1295 (1984).

**{¶ 89}** In the case before us, the issue of Appellees' alleged negligence could not be determined by laypersons without the assistance of expert witnesses. Whether the settlement was appropriate in light of the alleged injury is not something within the common knowledge of laypersons. Accordingly, because Persons failed to set forth any evidence on the issue of the alleged malpractice, the trial court properly rendered summary judgment in favor of Appellees. Persons' Third Assignment of Error, therefore, is overruled.

## V. Conclusion

**{¶ 90}** All of Persons' assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HARSHA, J. and HOOVER, J., concur.

(Hon. William H. Harsha and Hon. Marie Hoover, Fourth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

Copies mailed to:

Dwight D. Brannon
Matthew C. Schultz
Donna K. Persons
Arthur Phelps
Laurence Lasky
Hon. Dale A. Crawford, Visiting Judge
c/o Montgomery County Common Pleas Court